425 So.2d 1030 (1983)
C.D. SMITH, Jr.,
v.
Mary Louise WATSON, Betty Watson, Albert Watson and Lucinda Hughes.
No. 53318.
Supreme Court of Mississippi.
January 14, 1983.
*1031 Self & Jordan, Earl P. Jordan, Jr., Meridian, for appellant.
Cupit & Maxey, Glenda W. Tomlinson, Jackson, for appellees.
Before the Court EN BANC.
WALKER, Presiding Justice, for the Court:
C.D. Smith, Jr. filed a petition for writ of habeas corpus in the County Court of Warren County. His petition was filed in order to enforce a child custody decree granted by the Chancery Court of the First Judicial District of Hinds County. On appeal, Smith's sole assignment of error concerns the county court's failure to give full faith and credit to the chancery decree.

I.
The unusual factual situation in this case requires a recital of facts involving two lawsuits. Smith is the natural father of Cynthia Dyann Smith, who was born out of wedlock on December 5, 1970. The natural mother, Mary Louise Watson, is a resident of California and has seldom lived with her child. These natural parents have never been married, nor has Smith ever adopted the child as his own. With little exception, Cynthia Dyann has lived with maternal relatives throughout the ten years of her life prior to the lower court hearing: first being with her maternal grandparents until she was seven and then with her aunt, grandfather and mother alternately until 1980.
Following the birth of the child in question, the child's father, C.D. Smith, Jr., attended school at Mississippi State University and thereafter earned a comfortable salary from his employment. At the present *1032 time, he earns approximately $24,000 annually. Nonetheless, Smith contributed to the child's support solely in the form of clothing and gifts. These contributions did not begin until 1978, when he began visiting the child on infrequent occasions. Moreover, he has never paid any medical expenses or other ordinary expenses for the child.
Following the death of her grandmother in 1977, Cynthia Dyann went to live with Betty Watson, her aunt, in Hinds County, Mississippi, where she was living on February 1, 1980 when Smith filed his original bill of complaint for custody in the Hinds County Chancery Court pursuant to Mississippi Code Annotated section 93-11-65 (1972)[1]. Venue for the filing of this custody suit was based on the fact that both the child and her custodian, Betty Watson, lived in Hinds County, Mississippi, but they were not named defendants in the custody action. The only defendant named was the mother, Mary Louise Watson, a non-resident of the state of Mississippi. Service of Process was mailed to Watson in California, but the mail was returned "Refused", and no answer was filed in the lawsuit. On July 22, 1980, the Chancery Court of the First Judicial District of Hinds County entered a decree awarding the custody of Cynthia Dyann to C.D. Smith, Jr. However, prior to the entry of this decree, Cynthia left Hinds County and traveled to California to live with her mother. The child was returned to Warren County, Mississippi in the latter part of 1980 for a Christmas visit with her grandfather, Albert Watson. When this fact became known to Smith, he filed, inter alia, a petition for a writ of habeas corpus in the County Court of Warren County, seeking aid in obtaining custody of the child under the Hinds County decree and naming as defendants: Mary Louise Watson, mother of the child; Betty Watson, aunt of the child; Albert Watson, grandfather of the child; and Lucinda Hughes, great aunt of the child. In response, the defendants filed an answer and cross-petition which admitted the rendering of the Hinds County 1980 decree but denied that it legally vested custody of the minor child in C.D. Smith, Jr. Their cross-petition further alleged that there had been a material change in circumstances since the rendition of the 1980 decree from Hinds County. In conclusion, the defendants also sought a decree of custody in the mother, or in the alternative, in one of the other relatives made defendant in the action.
At the conclusion of the hearing on the habeas corpus petition and the cross-petition for custody, the county court entered an order finding that the Chancery Court of Hinds County was without jurisdiction when it entered its decree of July 22, 1980, in Cause No. 112,535. The court further gave custody of the minor child to Albert Watson, her grandfather, until further orders of the court with visitation rights being granted to the father and to the paternal grandparents.

II.
The appellant contends that the county court erred in disregarding the prior chancery court decree, and in conducting a full hearing to determine who should have custody. Generally, when prior proceedings conducted by another court determined the custody of an infant, the prior judgment must be regarded as final, and it is not subject to attack by subsequent habeas corpus proceedings. Neal v. Neal, 238 Miss. 572, 119 So.2d 273 (1960); Hinman v. Craft, 204 Miss. 568, 37 So.2d 770 (1948); 39 C.J.S. Habeas Corpus § 129 (1976). However, the habeas corpus court can disregard the prior decree where circumstances and conditions arising since the decree show that the party awarded custody is unfit to exercise or has abandoned custody of the child. Mixon v. Bullard, 217 So.2d 28 (Miss. 1968); Bradley v. Graham, 250 Miss. 244, 164 So.2d 772 (1964); 39 Am.Jur.2d Habeas Corpus § 92 (1968). Furthermore, the prior decree can be attacked for want of jurisdiction and thereby rendered void. Accord, Smith v. State, 155 So.2d 494 (Miss. 1963); Wheeler v. Shoemake, 213 Miss. 374, 57 So.2d 267 (1952). If the prior court lacked jurisdiction, *1033 a full hearing may be conducted, without regard to the prior decree, to determine child custody rights. Griffin v. Bell, 215 So.2d 573 (Miss. 1968).
In the instant case, the county court judge concluded that the Hinds County Chancery Court had no subject matter jurisdiction over the matter under Mississippi Code Annotated section 93-11-65 (1972). His ruling was apparently based on an improper interpretation of our ruling in Harper v. Harper, 300 So.2d 132 (Miss. 1974). In Harper, we concluded that section 93-11-65 provided a remedy to gain child support for a child born before marriage, if the father had subsequently acknowledged the child as his own after marriage to the mother. The Harper ruling did not exclude the availability of section 93-11-65 as a means for unmarried natural fathers to obtain custody of illegitimate children. Nor do we embrace such an exclusion now, and therefore, the chancery court properly held subject matter jurisdiction of Smith's suit for custody.
At the conclusion of the habeas corpus hearing, the county court judge granted custody of the child to its maternal grandfather, Albert Watson, without making any finding that both natural parents were unfit or had abandoned the child.
In resolving such custody matters the best interest and welfare of the child is the key. Lindauer v. Charleston, 58 So.2d 69 (Miss. 1952); Haynie v. Hudgins, 122 Miss. 838, 85 So. 99 (1920); Glidewell v. Morris, 89 Miss. 82, 42 So. 537 (1906). But, all things being equal, all jurisdictions recognize that the mother of an illegitimate child, if the mother is a suitable person, has the primary right to the child's custody. H. Clark, Jr., Law of Domestic Relations 176 (1968); Annot., 98 A.L.R.2d 417, 420 (1972). After the mother, most jurisdictions recognize that the putative father of the child has a superior right against all others to the custody of the child. Annot., 45 A.L.R.3rd 216, 220 (1972). Mississippi follows this majority rule. Aycock v. Hampton, 84 Miss. 204, 36 So. 245 (1904); Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900). Furthermore, upon acknowledging the child as his own, the father has an equal claim, with the mother, to the parental and custodial rights to the child. N. Hand, Jr., Mississippi Divorce, Alimony and Child Custody 271 (1981). If neither parent is fit or has abandoned the child, then the court is empowered to grant custody to some other suitable party.
We are of the opinion that the habeas corpus court reached the right result in part,[2] but for the wrong reason.
In suits between the parents of children involving the children's custody, neither the children nor third persons are necessary parties. However, where the child or children are in the custody of a third person, such as a grandparent or an aunt, as we find in this case, any decree awarding custody to one natural parent or the other is not binding on the grandparent or aunt unless they were made parties to the original custody suit. 24 Am.Jur.2d Divorce and Separation § 791 (1966); Favre v. Medders, 241 Miss. 75, 128 So.2d 877 (1961); Pace v. Barrett, 205 So.2d 647 (Miss. 1968); Noble v. Noble, 302 Ky. 679, 195 S.W.2d 319 (1946); see also Henderson v. Kleinman, 231 Ind. 657, 109 N.E.2d 905 (1953). That is to say, the grandfather and aunt are not necessary parties to the extent that it would affect the validity of the decree as between the mother and father, but would not themselves be bound by the decree if they were not made parties. The aunt and grandparent would be proper parties if made defendants, although not necessary parties.
In the case sub judice, the aunt and grandfather were not made parties to the original Hinds County Chancery Court proceeding between the mother and father of the child, Cynthia Dyann. Therefore, the decree of custody as between the mother and father is not conclusive and binding on them. When presenting their evidence at the habeas corpus hearing, the grandfather and aunt were not limited to showing a *1034 change of circumstances that occurred after the entry of the Hinds County decree, but could present evidence with reference to the facts surrounding their right to custody from the time the child began living with the grandfather and grandmother as an infant.
As stated earlier, the habeas corpus court found that the best interest of the child would be served by awarding its custody to the maternal grandfather; and, we are unable to say that the habeas corpus court was in error in so holding. The evidence is virtually uncontradicted that the child, Cynthia Dyann, lived with the maternal grandparents practically without interruption for the first seven years of her life, and that the natural father, J.D. Smith, Jr., had abandoned the child and thereby forfeited his right to her custody long before this lawsuit was begun. Evidence of appellant Smith's abandonment of the child is as follows:
1970  The father was not present at the time the child was born, but appellant saw her for the first time within a matter of weeks. There is no evidence in the entire transcript that the appellant offered to pay or in fact paid any support or medical expenses for the minor child.
1971  The appellant saw the minor child once during spring break and in the summer. No money or other forms of support were provided by the appellant or his family with the exception of some babysitting services during the first eight months of the minor's life.
1972  Appellant was a student at Mississippi State University. The appellant did not see nor support the minor child.
1973  The appellant did not see nor support the minor child. Appellant was a student, earned an undisclosed amount of income while he served six months in the military and continued as a reserve member.
1974  Appellant was a student and continued as a member of the reserve. The appellant did not see nor support the minor child. Appellant was a student and continued as a member of the reserve.
1975  Appellant was employed in West Point, Mississippi after graduation from school, earning $150.00 per week. Appellant did not see the minor child nor contribute to her support.
1976  Appellant was employed in West Point, Mississippi at $150.00 per week. Appellant did not see the minor child nor contribute to her support.
1977  Appellant was employed in Meridian, Mississippi at $15,000.00 per year. Appellant did not see the child nor contribute to her support nor send any gifts to the child.
1978  Appellant was earning $20,000.00 per year, and contributed approximately $500.00 during 1978 to the minor child's support. There is a conflict in the testimony as to the number of times he saw the minor child during 1978. Appellant states he saw her three times a month. Her custodian during that period of time, Betty Watson, testified that he saw the child only three times during the entire year of 1978.
1979  Appellant earned $22,000.00. There is a conflict in testimony as to the amount of money he contributed to the child's support and how often he saw her. The appellant testified that he contributed between $500.00 and $600.00 to her support during 1979, and saw the child approximately two or three times a month. Her custodian during 1979, Betty Watson, testified that he saw the child seven times and purchased four or five pieces of clothing for her during 1979 as the total amount of his support. Although the child was permitted to go to Meridian to visit the appellant, it was her custodian who paid for the bus tickets. Betty Watson was never reimbursed by the appellant for transportation costs.
1980  Appellant earned $24,000.00, but contributed nothing to the support of his child. He was further unwilling to pay any cost of transportation in order to see the child over the Christmas holidays. There is no testimony in the record that the appellant ever sent the child a Christmas gift or *1035 birthday gift until her birthday in 1980, when he sent her a card and $10.00.
The test as to what constitutes an abandonment is found in Bunkley & Morse's Amis on Divorce and Separation in Mississippi § 8.04 where it is said:
A careful study of the reported cases shows that where a parent, without just cause or excuse, forsakes or deserts his infant child for such a length of time, and under such circumstances, as to show an intent to shirk or evade the duty, trouble or expense of rearing it, or a callous indifference to its wants, or a reckless disregard for its welfare, he or she is guilty of such abandonment of it as to bar his or her right thereafter to reclaim its custody from any person who may have ministered to and protected it during such period of desertion. Such conduct conclusively rebuts and overthrows the presumption that the welfare of the child would, other things being equal, be best served by the custody and control of the parent. Having once deserted the child, there is no guaranty that such a parent might not in the future be guilty of some equally atrocious conduct toward it.
The conduct of the child's natural father, C.D. Smith, Jr., fits the above criteria so fully that it could have been written for this particular case. By the time Cynthia Dyann was seven years of age, Smith's abandonment of the child was so firmly established as to bar his right thereafter to reclaim custody from the grandparents. Any future relationship between Smith and Cynthia Dyann and her grandfather, shall not be as a matter of Smith's right but must arise out of mutual love and respect.
We express no opinion as to the mother's qualifications with respect to having custody of Cynthia Dyann. We do take note, however, that the habeas corpus court did not have the authority to award visiting rights to the child's father and the paternal grandparents. Nor did the habeas corpus court have the authority to maintain continuing jurisdiction over this matter.
The habeas corpus court properly denied the appellant's petition for writ of habeas corpus and is affirmed thereon. That part of the court's order permitting visitation rights to the child's father and paternal grandparents is reversed and set aside.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SUGG, P.J., BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.

APPENDIX "A"
In addition to the right to proceed under section 93-5-23, Mississippi Code of 1972, and in addition to the remedy of habeas corpus in proper cases, and other existing remedies, the chancery court of the proper county shall have jurisdiction to entertain suits for the custody, care, support and maintenance of minor children and to hear and determine all such matters. Proceedings may be brought by or against a resident or nonresident of the State of Mississippi, whether or not having the actual custody of minor children, for the purpose of judicially determining the legal custody of a child. All actions herein authorized may be brought in the county where the child is actually residing, or in the county of the residence of the party who has actual custody, or of the residence of the defendant. Process shall be had upon the parties as provided by law for process in person or by publication, if they be nonresidents of the state or are not found therein after diligent search and inquiry or are unknown after diligent search and inquiry; provided that the court or chancellor in vacation may fix a date in term time or in vacation to which process may be returnable and shall have power to proceed in term time or vacation. Provided, however, that if the court shall find that both parties are fit and proper persons to have custody of the children of the marriage, and that either party is able to adequately provide for the care and maintenance of the children, and that it would be to the best interest and welfare of *1036 the children, then any such child who shall have reached his twelfth (12th) birthday shall have the privilege of choosing the parent with whom he shall live.
Provided further, that where the proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children of the marriage in proportion to the relative financial ability of each.
NOTES
[1] The full text of Section 93-11-65 is attached as Appendix "A."
[2] See the last two paragraphs of this opinion.