SOUTHWICK, P.J, for the Court:
¶ 1. The alleged father of two minor children brought a petition to set aside litigation settlements entered on the children’s behalf six years earlier. The petitioner had not been joined in the earlier action, an omission that he argues made the settlements void. The Chancery Court of Leflore County dismissed the petition. The putative father appealed. He alleges that he was the children’s father and should have been joined in the settlement proceedings. We disagree and affirm.
FACTS
¶ 2. The two minor children were injured in an automobile-truck accident in August 1991. A truck driven by an employee of Farrish Trucking Company collided with the van that carried the children and several other people. One child, Amanda, was born in 1990 and the other, Lavoris, Jr, was born in 1988. Martha Hemphill, the mother of these two children, through the effort of counsel reached a settlement with Farrish. Hemphill and her two children attended a settlement hearing in October of 1992. By statute, a court may approve settlement of a minor’s unliquidat-ed claim for less than $10,000 without the appointment of a guardian. Miss.Code Ann. § 93-13-211 (Rev.1994). The chancellor approved Lavoris’s settlement of less than $10,000 without a guardianship first being established. He also named Hemphill as guardian for Amanda and approved that child’s settlement worth more than $10,000.
¶ 3. In both children’s petition for settlement, Hemphill named Lavoris Weathers, Sr. as the father. She alleged that she and Weathers had never married, that he did not live with them and did not provide monetary support for either child. Six years later, though, the putative father, Weathers, petitioned the court to set aside both settlement orders. Weathers argued that the orders were void because he was not joined as a party. In contrast to what the mother claimed in the 1992 pleadings, Weathers now asserted that he had been living with her and the children at the time of the settlement and provided “regular support for the minor.” Farrish filed a motion to dismiss. An evidentiary hearing was held in which Weathers testified that *170 he had known about the litigation while it was occurring, that he was aware of the settlements approximately from the time that they were entered, and that he had a general understanding from the beginning about the details of the settlement. No proof of Weathers’s paternity was presented. The record from the 1992 hearing revealed that Hemphill testified that Weathers did not live with the family nor did he support them.
¶ 4. The chancellor found that Weathers had never been adjudged the father of either child. Neither was there proof that Weathers had been named as the father on either child’s birth certifícate. Instead, affidavits from the State Board of Health were acquired stating that no birth certificate for either child was on file. Relying on this evidence, the chancellor held that Weathers did not have to receive notice of the 1992 proceedings on the settlement. The court also found that the question of paternity was now irrelevant since the mother had the right to act on her own in 1992. Weathers also was found to have waited too long to employ Rule 60(b) in seeking relief from a final judgment. Farrish’s motion to dismiss was granted. Weathers appeals.
DISCUSSION
f 5. The initial legal issue is whether the chancellor in the 1992 settlement hearing had the authority to permit the settlement of the two minor children’s claims without the joinder of the putative father. A statute requires that both parents be given notice of proceedings involving the guardianship of their minor children:
In all proceedings involving a ward and brought under Chapter 13, Title 93, Mississippi Code of 1972, except as hereinafter provided, the proceedings shall join as defendants the parents or parent of the ward then living.... Process need not be served hereunder, however, if the parent or parents then living ... shall unite with the guardian in his petition.
Miss Code Ann. § 93-13-281 (Rev.1994). The referenced Chapter 13 of Title 93 contains the general sections on guardians and wards. The putative father argues that this statute requires that he be joined as a party to the settlement in order for the settlement order to be valid.
¶ 6. The questions before us are straightforward enough. The starting premise is that despite several alternative means to have paternity proven, Weathers has never been recognized by law as the father. In that event, is there only one “parent” for purposes of the just-quoted statute for joinder of parties? We consider statutory construction issues in finding an answer to that question. It is also necessary to examine the effect of the assertions in the 1992 proceedings that the father was known but that he was nowhere to be found and did not support the children. If six years later the putative father proves that he was not only in the picture, but in the home and supporting the family at the time of the judgment, is the judgment subject to being set aside?
¶ 7. We dispense with a few preliminary factual issues. There was testimony at the 1998 hearing that Weathers and Hemphill may have sought to be married or even had a ceremony, but no records were produced of the marriage. If the marriage occurred, it was after the 1992 settlement. No birth certificates were submitted for either child. Had there been, proof would have existed of whether anyone was named on them as the father of either child. The evidence supports that at the túne of the 1992 settlements, Weathers and Hemphill were unmarried and no adjudication nor official record in which Weathers asserted paternity existed.

A. Procedures for assertion of paternity

¶ 8. The means to assert paternity in 1992 were several. A statute provided that a mother, child or state agency could *171 institute a paternity action. Miss.Code Ann. § 93-9-9, as amended 1989 Miss. Laws ch. 438, § l.[1] The statute has since been amended to permit the purported father to bring suit as well,[2] but in 1992 the statute primarily was a means by which paternity could be proved by someone seeking support for the child. There is no assertion that this statute has ever been utilized by the parties.
¶ 9. In addition, the father could have had his name on the child’s birth certifícate. This could have been done at the initial time that information was given to the State Board of Health or, in 1992, within one year of the child’s birth. Miss. Code Ann. § 41-57-23(2), as amended 1989 Miss. Laws ch. 511, § 3. The one year limitation has since been changed. Miss. Code Ann. § 41-57-23(2) (Supp.2000) & § 93-9-9(3) (Supp.2000).
¶ 10. Finally, in 1992 a father had at least one other option to prove his paternity. A statute permitted chancery courts “to entertain suits for the custody, care, support and maintenance” of children, without a requirement that there be a pending divorce proceeding. Miss.Code Ann. § 93-11-65 (Rev.1994). The Supreme Court recognized this statute as the mechanism for a father of an illegitimate to enforce custody, visitation and other rights, which may require initial proof of paternity. Smith v. Watson, 425 So.2d 1030, 1032 (Miss.1983). Since its amendment to permit utilization by a father, section 93-9-9 may be the most direct means for a father to prove paternity.
The Supreme Court held that an action to prove paternity that was not dependent upon section 93-9-9 (which has its own statute of limitations) must be brought within the period of the general statute of limitations. Johnson v. Ladner, 563 So.2d 1368, 1370 (Miss.1990). In 1992 the general statute of limitations had recently been changed to three years; as to any cause of action that accrued before July 1, 1989, it remained six years. Miss.Code Ann. § 15-1-49 (1972) (amended from six years to three years as to causes of action that accrued after June 30, 1989, 1989 Miss, laws, ch. 311, § 7). Weathers was not time-barred from attempting to prove his paternity had he so desired of the children born in 1988 and 1990.
¶ 11. There is no evidence that either Weathers or the children’s mother, Martha Hemphill, even until this date, has utilized any of the procedures to have Weathers declared the father.[3] Even in the petition to set aside the earlier settlement Weathers did not seek an adjudication that he was the father, nor offer any proof. The defendant Farrish filed a motion to require Weathers to submit to a blood test. That motion was never ruled upon as the chancellor granted the motion to dismiss.
¶ 12. Therefore, in 1992 at the time of settlement there was no legally recognized father. We examine other facets of the issue before deciding whether Weathers nonetheless had to receive notice of the guardianship as at least a possible parent of the wards.

B. Custodial rights to illegitimate child

¶ 13. Farrish presents arguments that the mother of an illegitimate child has sole custody. A specific exception in the guardianship notice statute requires joinder of both parents unless custody has been awarded only to one parent by decree. In such a case, only the custodial parent must be joined. Miss. Code Ann. Sec. 93-13-281 (Rev.1994). No de *172 cree gave the children’s mother exclusive custody, but it is argued that by operation of law she had such custody. The Supreme Court concluded that in the absence of special factors, “all jurisdictions recognize the mother of an illegitimate child, if the mother is a suitable person, has the primary right to the child’s custody.” Smith v. Watson, 425 So.2d 1030, 1033 (Miss.1983). The Court then held that “upon acknowledging the child as his own, the father has an equal claim, with the mother, to the parental and custodial rights to the child.” Id. That means the rights of a supposed father must be asserted before they can be given effect. In Smith and a case it relied upon, Aycock v. Hampton, 84 Miss. 204, 36 So. 245, 246 (1904), the putative fathers were seeking custody. Also instructive is a statute providing that public records that refer to the relationship of a mother to her illegitimate child should name the mother “as the parent having sole custody of the child.... ” Miss.Code Ann. § 93-9-47 (Rev.1994).
¶ 14. A reasonable interpretation of these authorities is that the natural mother of an illegitimate child, when no father has taken steps to prove or formally assert his paternity, is the custodial parent with the legal authority to make day to day decisions concerning the welfare of the minors. Clements v. Young, 481 So.2d 263, 267 ( Miss.1985) (effects of custodial authority). However, even if the mother would have the right of sole custody absent any effort by the alleged father to assert his own rights, we do not find the exception in the guardianship notice statute, section 93-13-281, to be applicable. Since the only relevant exception to making both parents defendants is if one of them has sole custody by “by decree of court,” we will not enlarge the exception by in effect adding “or by operation of law.” The express listing of one statutory exception reliably enough here indicates the exclusion of all others. Akers v. Estate of Johnson, 236 So.2d 437, 440 (Miss.1970).

C. Meaning of “Parent” in Guardianship Statute

¶ 15. Even though we find the custody statutory exception to be inapplicable, that still leaves the question of whether Weathers was a “parent” in 1992 when the settlement was made. We have already detailed the means by which someone claiming to be the father of either child could have sought a judicial or other official determination of parenthood. Since that was not done, no person was recognized by law as the father of these two children at the time of the 1992 guardianship. The interpretative question becomes whether the requirement in section 93-13-281 to join both “parents” means that an attempt to ascertain the father of an unacknowledged illegitimate may be an aspect of a suit under the statute.
¶ 16. As partial support for his view, Weathers cites a case that says both parents, if living, “are absolutely essential parties” to proceedings to which section 93-13-281 applies. Mississippi State Bar Ass’n v. Moyo, 525 So.2d 1289, 1296 (Miss.1988). The case goes on to say that there may have been reasons why the other parent need not be joined, but “the petition should have positively alleged why only the mother was a petitioner.” Id. Here the petition alleged why the father was not present, namely, that the parents of the children had never married and the father did not support the children. We find nothing in Moyo that controls the issue of whether an absent and nonsupporting father of children born out of wedlock is a parent under section 93-13-281. Weathers also cites a precedent upon which Moyo relied that required chancellors to protect the best interest of children beyond the letter and through the spirit of these statutes. Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593, 595 (1932). That is guidance that we will follow.
¶ 17. To decide the question, we turn first to the precise language of the statute. We find nothing in section 93-13-281 itself *173 that sheds much light on the meaning of “parents.” That section refers to the “natural parents” in distinguishing them from adoptive parents. The natural parents need not receive notice if the child has been adopted. Thus “natural parents” implies that the parents need not have been married, but that is not our issue. Our rather simple if confounding question is whether the natural father must be known to the law at the time of the proceedings.
¶ 18. We next examine the statute in the context of the overall enactment of which it was a part. What became section 93-18-281 was first enacted in 1972 as part of a comprehensive bill that had these purposes: “to define the term ‘ward’; to provide rules as to joinder of parties in suits involving wards; to amend [several guardianship statutes in order] to provide uniform statutes as to persons under all forms of disability; and for related purposes.” 1972 Miss. Laws ch. 408, caption. The statute that concerns us was section 11 out of a total of 21 in the Act. The word “parent” was used in many of the other sections, a use which logically should be considered consistent throughout unless the context suggests otherwise. We find that especially true since section 11 was a new provision that had no pre-existing language. That creative flexibility would have allowed the language to be adjusted to assist the goal of making the guardianship provisions “uniform.”
¶ 19. Under these uniform provisions, one rule exists for giving notice when any one of a variety of court orders regarding a ward is being sought. The notice necessary to appoint one parent over the other as the guardian, to appoint a non-parent a guardian to substitute for unfit parents, to settle a claim, to sell land or execute an oil and gas lease, is all the same. Miss.Code Ann. §§ 93-13-1, 93-13-3, 93-13-43, 93-13-49, 93-13-281. What is instructive is that even though prior to the adoption of section 11 of the 1972 Act there was no specific notice statute for establishment of a guardianship of a minor, there was case law regarding what was required as a due process minimum. Though we cannot know if the legislature considered these requirements, neither should we assume that they ignored what the Supreme Court had found to be necessary. We look to what the legislature would have provided by this statute to comply with the constitutional minimum.
¶ 20. In one precedent the Mississippi Supreme Court held that a couple with whom a child had been living since birth were in loco parentis to the child. This meant that they stood in the position of the parents and could not be deprived, any more than could the parents themselves, of their parental rights without a notice of judicial proceedings and an opportunity to be heard. Farve v. Medders, 241 Miss. 75, 82, 128 So.2d 877, 880 (1961). The fact that a constitutional due process right can be involved in the giving of notice to parents was made evident in a case that Farve cited. Britt v. Allred, 199 Miss. 786, 789, 25 So.2d 711, 712 (1946). Britt in turn relied upon a precedent that had concluded that no statute existed, nor would one be constitutional, that would “authorize a hearing in which a person may be deprived of the custody and society of his children and their nurture and education without notice and a hearing thereon.” Sinquefield v. Valentine, 159 Miss. 144, 132 So. 81, 83 (1931).
¶ 21. It is important that none of the discovered precedents discuss these obligations in the context of an unadjudicated father of an illegitimate child. We have found that the legislature in another statute explicitly provided that such a person did not need to receive notice even as to the adoption of his child. No discovered case law in Mississippi prior to the 1972 Act on wards had challenged this adoption statute as unconstitutional, • but we have found United States Supreme Court authority that a person in Weathers’s position is not entitled to notice even of an adoption.
*174 ¶ 22. First we look at the adoption statute itself. Miss.Code Ann. § 93-17-5 (Supp.2000). This statute regarding necessary parties for an adoption is useful since the Supreme Court has employed the traditional canon of construction “that each section of the Code dealing with the same or similar subject matter must be read in pari materia and to the extent possible each section of the Code must be given effect so that the legislative intent can be determined.” Yarbrough v. Camphor, 645 So.2d 867, 871 (Miss.1994). During adoption proceedings, notice to the father of a child born out of wedlock was not statutorily required in the version of the statute that existed at the time of the 1972 Act. In fact, the statute used the exact words that would answer our issue had they only been in the guardianship notice statute: “the father [of a child born out of wedlock] shall not be deemed to be a parent for the purpose of this chapter, and no reference shall be made to the illegitimacy of such child.” Miss.Code Ann. § 93-17-5 (as adopted 1964 Miss. Laws ch. 309, sections 1 & 2). Relying upon the statute, the Supreme Court held that a father of an illegitimate child need not be made a party to an adoption. Humphrey v. Pannell, 710 So.2d 392, 395 (Miss.1998).
¶23. The statute was amended twice since 1964, but the’ latest version again states that the father need not be given notice. Miss.Code Ann. § 93-17-5 (Supp. 2000) (not effective until July 1, 2001). An earlier post 1972 amendment provided that a father of a child born out of wedlock had a right to object to an adoption only if he had demonstrated a full commitment to the responsibilities of parenthood within thirty days after the birth of the child. 1998 Miss. Laws ch. 516, section 13.
¶24. Rules such as these have been found to be constitutional. The United States Supreme Court has defined the due process rights of fathers of children born out of wedlock. A clear distinction has been drawn: when a father demonstrates commitment to the responsibilities of parenthood by “partieipat[ing] in the rearing of his child,” due process rights arise. Caban v. Mohammed, 441 U.S. 380, 392, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979). Parenthood alone is insufficient. The Court allowed the more significant intrusion upon the potential rights of a father than occurred here — the outright adoption by another couple — without finding a due process right of notice to a putative father who had never established a substantial relationship with his child or provided support. Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). No notice had to be given even though actual knowledge of his existence and location might exist, in part because simple alternatives existed that would have entitled him to notice. Cited as authority was a law review note that appears especially relevant to the present case: “Note, 58 Neb.L.Rev. 610, 617 (1979) (‘a putative father’s failure to show a substantial interest in his child’s welfare and to employ methods provided by state law for solidifying his parental rights ... will remove from him the full constitutional protection afforded the parental rights of other classes of parents’).” Lehr, 463 U.S. at 261, 103 S.Ct. 2985. We have already described the various means that Weathers could have employed to have himself recognized as the father, actions he had not then and still has not taken. The State provided sufficient means for an interested father to gain the right to notice.
¶ 25. We find that “full constitutional protections” of notice and an opportunity to be heard do not apply to a person who has never been adjudicated nor legally self-identified as the father, and who is not living with nor supporting the children.[4] By reading the adoption notice statute in pari materia with the statute on notice for wards, we find that the meaning of “parent” in section 93-13-281 reasonably has *175 the same meaning as it does in the adoption notice statute that existed at the same time.
¶ 26. We recognize the contrary argument that could be made under this analysis. That argument is that when the absent and unadjudicated father of an illegitimate child was declared not to be a “parent” under the adoption statutes, that point was made explicitly in the statute. On balance, though, we find no justification for an absent, unadjudicated father to be entitled legislatively to notice for the various proceedings under chapter 13 of Title 93, which are relatively limited actions of guardianship, oil and gas leasing, and of course custody, when that same alleged father would not be entitled to notice if the child was going to be adopted.
¶ 27. Whether the legislature with section 11 of the 1972 statute on wards was attempting finally to codify the judicially-recognized requirements and to make them consistent with the adoption statute is impossible to know as a matter of actual intent. Yet when the statute is otherwise susceptible to different interpretations, we find that the proper interpretation to choose is the one that is consistent with the then-existing constitutional requirements and is also consistent with a statute that should be read in pan mate-ria. We would avoid that conclusion only if the plain language of section 93-13-281 would not bear such an interpretation or some other evidence compelled a different reading.
¶ 28. We find that true even when some of the procedures subject to the notice statute for wards might not invoke any constitutional due process requirements. It is enough that some of them do. An example is section 1 of the 1972 Act. There a non-parent guardian could not have custody of a ward if one of the parents was “a suitable person.” 1972 Miss. Laws ch. 408, § 1, codified as Miss.Code Ann. § 93-13-1. An earlier enacted guardianship statute to which the same notice provision applies permits one parent to be named the sole guardian if the parents are separated. Miss.Code Ann. § 93-13-3. For those provisions, Faroe, Britt, and other due process precedents would have had to be satisfied. We find, then, that whatever is necessary for due process for those actions to which some process constitutionally is due, is also the manner in which to interpret section 11 for all procedures that are authorized under what is now Chapter 13 of Title 93 of the Code regardless of whether they in themselves raise due process concerns.
¶ 29. Under this analysis, we find that Weathers did not need to be given notice or be joined in the proceedings since the petition alleged, and Hemphill testified, that the children were born out of wedlock, that no one had ever been adjudicated the father and that Weathers himself did not live with nor support the children.
¶ 30. Weathers also complains, though, that the allegations in those 1992 pleadings were false. We will examine that point as our final issue.

D. Allegation that Weathers was supporting children in 1992

¶ 31. In Weathers’s petition to set aside the settlement, he alleged that he had been in 1992 “living with Martha Hemphill Weathers and Lavoris Weathers, Jr., and was providing regular support for the minor. In addition, petitioner has paid and continues to pay child support of his minor daughter.”
¶ 32. In effect, Weathers could accept our conclusion that an unadjudicat-ed putative father who has taken no steps to assert paternity nor support the children is not a “parent” under section 93-13-281, but then would argue factually that he did in fact live with and support the- children. The 1992 allegations to the contrary were made and supported by Hemphill's testimony at a hearing. Weathers acknowledged that he was aware of those proceedings at the time that they *176 occurred and knew of the settlement. Since Weathers is arguing that the 1992 proceedings were based on false representations to the court, he is asserting that a necessary party was missing from those proceedings because of fraud or misrepresentation. He in addition argues that the interests of the children were not fully protected because of his absence from the proceedings.
¶ 33. At one level Weathers argues that the 1992 decree was void. When attempting to be precise about what judgments are void, the Supreme Court has quoted the federal rule that “a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.” Bryant, Inc. v. Walters, 493 So.2d 933, 938 (Miss.1986).
¶ 34. If there was a jurisdictional problem, obviously it did not concern the subject matter of the 1992 suit. The chancery court had subject matter jurisdiction to consider the guardianship and the settlements under the statutes already cited. Certainly the issue that we are facing does not concern the absence of jurisdiction over the parties who were present and made subject to the 1992 orders. Finally, we have discussed the due process rights of fathers of out-of-wedlock children. Even if Weathers had been living with the children and providing support in 1992, we have discovered no case law suggesting that he would have had a due process right to participate in proceedings approving the settlement of his children’s claims for personal injuries. Had permanent custody or society of the children been at risk, a due process issue might be present. Weathers is asserting a statutory right under section 93-13-281, but we do not find his participation to be constitutionally required under any construction of the facts of his attentiveness to his children. At most, then, Weathers is arguing the absence of a necessary party but the 1992 judgment was not void.
¶ 35. Looking for the proper procedure for Weathers to attack the 1992 judgment, void or not, we note that since he was not a party to the judgment, Rule 60 facially is inappropriate. The Rule permits a court to “relieve a party or his legal representative from a final judgment” for various reasons. M.R.C.P. 60(b). We will not explore further whether a person claiming to have been a necessary party to an earlier proceeding may use Rule 60(b). Since we find the 1992 decree was not void, the only possible grounds on which even a party could seek relief from the 1992 judgment is that it was entered based on fraud, misrepresentation, or other misconduct by an adverse party. Such a claim must be brought within six months of the judgment. M.R.C.P. 60(b)(1). Six years separated the judgment here and the request for relief.
¶ 36. Instead of applying Rule 60, if Weathers’ challenge is viewed as a collateral attack on the former judgment, it still fails. Attempts to prove in a collateral attack that a former judgment is void must rely solely on what appears on the face of the record. Bolls v. Sharkey, 226 So.2d 372, 376 (Miss.1969). This 1992 record indicates that Weathers was properly omitted from the proceedings.
¶ 37. However inadequate the putative father believed the settlements to be, he was not required on this record to have notice of the settlements or to be joined in the petitions to settle the minors’ claims. At the 1992 settlement hearing, the 1998 motion hearing and even now, there is only one legally known parent, the mother. The chancellor had the authority to approve the settlement of both minors without notifying any putative father.
¶ 38. THE ORDER OF THE CHANCERY COURT OF LEFLORE COUNTY DISMISSING THE PETITION TO *177 SET ASIDE THE SETTLEMENTS IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, MYERS, PAYNE, and THOMAS, JJ., concur.
IRVING and LEE, JJ., concur in result only.
CHANDLER, J., not participating.

. "Paternity may be determined upon the petition of the mother, the child, or any public authority chargeable by law with the support of the child...."

. 1994 Miss. Laws, ch. 614, § 2 (father gained right to use procedures to assert paternity).

.We note that section 93-9-28 also provides various procedures for the voluntary acknowledgment of paternity. The children’s births occurred prior to the statute's enactment in 1994, and therefore, the statute is not applicable to Weathers' default in 1992.

. We are not making any holding regarding the notice procedures for adoption or for termination of parental rights. Statutes that are not in chapter 13 of Title 93 address those.