947 So.2d 375 (2007)
Sernia THOMAS, Appellant
v.
Renovielle D. BYARS, Appellee.
No. 2005-CA-00792-COA.
Court of Appeals of Mississippi.
January 23, 2007.
*376 Alsee McDaniel, Indianola, attorney for appellant.
Nick Crawford, attorney for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. This case involves custody a minor child, Jozcelyn Thomas. Sernia Thomas, the mother of Jozcelyn Thomas, appeals from the order of the Washington County Chancery Court granting custody of her minor child to the father, Renovielle Byars. In issuing its order, the chancery court found that it had no choice but to award custody of the minor child to the father instead of the maternal grandparents because the grandparents were not joined as parties in the custody suit. The mother, Thomas, asserts that the lower court erred in awarding custody to the father, Byars, rather than the grandparents, and asks this Court to review whether the lower court possessed the authority to place child custody in a third person not party to the suit.
¶ 2. However, upon our review of the case, this Court recognized a potential jurisdictional defect and ordered supplemental briefing of the parties. Prior to the entry of the order by the Washington County Chancery Court, the grandparents were granted temporary custody of Jozcelyn by the Youth Court of Washington County due to the child's abandonment. We find that the chancery court lacked jurisdiction over the matter, and that exclusive original jurisdiction over the custody matter lies in the youth court. Accordingly, we vacate the portion of the chancery court order awarding custody of the minor child to Byars.

STATEMENT OF FACTS
¶ 3. A summary of the events leading up to this appeal is necessary to an understanding of our holding. This case began in November of 1999 when a four-year-old child, Jozcelyn Thomas, was abandoned by her mother, Sernia Thomas. Thomas left Jozcelyn with a babysitter for what was supposed to be a week; however, Thomas did not return until March of 2000. When Thomas did not return, the babysitter took Jozcelyn to the Mississippi Department of Human Services (MDHS). At this time, MDHS contacted the maternal grandparents, Frank and Helen Johnson (the Johnsons), and requested that they care for *377 Jozcelyn, along with Thomas' three other children, and the Johnsons obliged. As a result of Jozcelyn's abandonment, the Youth Court of Washington County awarded temporary custody through an emergency custody order to the Johnsons on January 11, 2000.[1]
¶ 4. In March of 2000, Thomas finally returned to Washington County, and she was charged with child desertion. She pled guilty and was sentenced to one year of house arrest, placed on probation for four years, and ordered to participate in parenting classes. Jozcelyn remained in the custody of the Johnsons. Around this same time, Helen Johnson approached Renovielle Byars, the alleged father, and asked whether he wanted to take custody of Jozcelyn. At this time, Byars declined and stated that he wanted Jozcelyn to stay with her siblings at the Johnsons' home. Over the next few years, Byars visited Jozcelyn on holidays and would take her to his home, but never for more than two weeks. Financially, Byars only provided the Johnsons with a total of $750 to assist with the support of Jozcelyn. However, since Jozcelyn's birth, Byars claimed her as his dependent for the purposes of his state and federal tax returns.
¶ 5. On July 30, 2004, MDHS filed a complaint on behalf of the Johnsons, who had custody of Jozcelyn, seeking to establish paternity and other relief against Jozcelyn's alleged father, Byars. Byars filed an answer to the MDHS complaint and also filed a cross-complaint seeking custody of Jozcelyn. Although not an original party to the suit, Thomas, the mother, was allowed to intervene into the chancery court custody suit and filed an answer to Byars' cross-complaint, together with her cross-complaint seeking custody. A hearing was held by the chancery court on the MDHS complaint to determine paternity and support, Byars' cross-complaint seeking custody and Thomas' cross-complaint seeking custody. On March 10, 2005, the chancery court issued an order awarding custody of Jozcelyn to Byars. The chancery court made the following findings:
I want the record to reflect that the court is [awarding custody to the father] because the court has no choice. The court does not actually believe that the father wants this child. The court believes the father does not want to pay child support. I think it's a shame. I do not think it's is [sic] in the best interest of this child that the child go to the father. In fact, I think that this is probably going to be detrimental to the child, her grades and everything else. I think we are splitting this child from her siblings. We're placing her in an environment where she's not really wanted, all for the sake of avoiding paying child support. . . . I think it's a mistake and it's not something the court wants to do, but I don't believe the court has any choice. I was tempted to go ahead and leave the child [with the grandparents], which I think is in the best interest of the child, where she is. I suspect the child will end up there anyway, as soon as the father is satisfied that he does not have to pay any child support.
Subsequent to these findings, an order was then issued by the chancellor adjudicating paternity finding Byars to be the biological father of Jozcelyn, ordering Thomas to file *378 a financial statement, and granting custody of Jozcelyn to Byars. Thomas appealed the chancery court order, asking this Court to consider whether the chancery court erred in finding that it did possess the authority to award child custody to a third person, namely the grandparents, not party to the suit.
¶ 6. Noticing a potential jurisdictional defect regarding the chancery court's custody award, however, this Court ordered the parties to provide supplemental briefing as to (1) whether the chancery court properly had jurisdiction over the case in light of the youth court order granting temporary custody to the maternal grandparents, and (2) whether the order of the chancery court is void for failure to include necessary parties to the lawsuit.

DISCUSSION
I. WHETHER JURISDICTION OF THE ISSUE OF JOZCELYN'S CUSTODY LIES IN THE CHANCERY OR YOUTH COURT?

STANDARD OF REVIEW
¶ 7. Jurisdictional issues are matters of law, and on appeal, this Court reviews legal issues de novo. Tyson Breeders, Inc. v. Harrison, 940 So.2d 230(¶ 5) (Miss.2006).

LEGAL ANALYSIS
¶ 8. Pursuant to Mississippi Code Annotated section 43-21-151, the youth court has exclusive original jurisdiction over cases involving abused, neglected, or delinquent children. This jurisdiction conferred upon the youth court continues until the child's twentieth birthday, unless terminated sooner by order of the youth court. Miss.Code Ann. § 43-21-151(1)(c) (Rev.2004); Helmert v. Biffany, 842 So.2d 1287(¶ 18) (Miss.2003). Youth Court Law ensures that children coming within its jurisdiction become responsible, accountable and productive citizens. When a youth court order and a chancery court order conflict in a case regarding an abused or neglected child, the order of the youth court predominates because jurisdiction over the child resides in the youth court. D.L.D. v. Wilkinson County, 606 So.2d 1125 (Miss.1992) (holding youth court custody order trumped chancery court custody order in a case regarding an abused child, although chancery court retained jurisdiction first in parents' divorce case). Mississippi Code Annotated section 43-21-301(1) makes clear that the youth court has exclusive jurisdiction to render a custody decision and states in pertinent part: "[n]o court other than the youth court shall issue [a] . . . custody order for a child in a matter in which the youth court has exclusive original jurisdiction but shall refer the matter to the youth court." If a party seeks modification of the custody arrangement, the jurisdiction to hear the matter lies in the youth court.
¶ 9. In this case, the youth court initiated jurisdiction when it issued an emergency custody order on January 11, 2000, granting custody of Jozcelyn to her grandparents as a result of her mother's desertion. The jurisdiction retained by the youth court is exclusive and original and was still in effect on March 10, 2005, when the chancery court issued the order awarding Byars custody of Jozcelyn. Therefore, because the youth court had exclusive original jurisdiction over the case, the youth court order of January 11, 2000 supersedes the chancery court order of March 10, 2005. Therefore, we vacate the portion of the chancery court order inasmuch as it awards custody to Byars, due to the chancery court's lack of jurisdiction over the matter. The proper route for Byars to obtain an award of custody was not by filing his cross-complaint to the MDHS complaint in chancery court, but *379 rather was through filing in the youth court.
II. WHETHER THE CHANCERY COURT ORDER IS VOID FOR FAILURE TO INCLUDE NECESSARY PARTIES IN THE CUSTODY SUIT?
¶ 10. As we have already found that the chancery court lacked jurisdiction over the issue of custody and have vacated that portion of the order, we are left to determine whether the remainder of the chancery court order is void for failure to include the grandparents as necessary parties. The chancery court order addressed issues other than that of custody. The order also adjudicated paternity, finding Byars to be Jozcelyn's father, as well as ordered the mother to file a financial statement, pending a child support award. The portion of the order pertaining to custody has already been vacated by this Court due to lack of the chancery court's jurisdiction; thus, discussion of whether the grandparents were necessary parties to the suit involving custody is moot. However, the issues of paternity and child support are left undisturbed and we find that these issues were properly within the parameters of the chancery court's authority to decide. The issues of paternity and child support did not involve the grandparents; therefore, the grandparents would not be necessary parties.
¶ 11. Had the chancery court had proper jurisdiction to award custody of Jozcelyn to her father, then the grandparents would have been proper, but not necessary, parties to the custody case. Furthermore, the absence of such a proper party would not render the chancellor's decree void. When a minor child is in the custody of a third person, such as a grandparent, the third person is a proper party to a custody action, although not necessary to deem an order valid. Smith v. Watson, 425 So.2d 1030, 1033 (Miss.1983). The repercussions of failure to include the third party in the custody suit is that the judgment is not binding against the third party unless they were parties to the custody suit. Id. But, in the case sub judice, because the custody portion of the chancellor's decree is vacated by this Court, the grandparents were not proper parties to the suit regarding the adjudication of paternity and the award of child support.

CONCLUSION
¶ 12. The chancery court order, so far as it addresses custody of the minor child, is vacated. Custody matters involving Jozcelyn Thomas belong within the purview of the youth court because the youth court retains exclusive original jurisdiction. All other matters addressed in the order of the chancery court are affirmed, as the grandparents, although holding legal custody of the minor child, are not necessary parties to the matters adjudicated therein.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS VACATED AS TO THE AWARD OF CUSTODY AND AFFIRMED AS TO THE ADJUDICATION OF PATERNITY AND SUPPORT. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] From January 2000, the time the custody award was granted by the youth court, until September 2004, Jozcelyn remained in the Johnsons' custody without challenge from either Byars or Thomas. For reasons unknown to this Court, to this day, a hearing has not been held on the temporary order in the youth court and the order has remained undisturbed.