MARSHALL *v.* MARSHALL, A MINOR BY NEXT FRIEND

No. 40451 April 1, 1957 93 So. 2d 822

*Colin L. Stockdale,* Jackson, for appellant.

*Paul .G. Alexander,* Jackson, for appellee.

Hall, J.

Jerry Allen Marshall is a minor of the age of 11 years and is a son of the appellant and Mrs. Juanita Reeves, who was formerly Mrs. Juanita Marshall. The parents were divorced by decree of the Chancery Court of Hinds County, Mississippi, on December 3, 1947, at which time both parents were residing in Hinds County. In the divorce decree provision was made dividing the custody of the minor child between the parents and directing the father to pay to the mother the sum of $25.00 per month for the support and maintenance of the child. In the decree the court retained jurisdiction pertaining to the custody and maintenance of the child. The decree was modified on May 27, 1950, to the extent that the mother was granted the custody of the child because the father had moved out of the State of Mississippi, but the decree continued in effect the amounts to be paid by the father for maintenance of the child, and gave to the father the right of reasonable visitation with the child.

On July 15, 1950, the mother married William Maxwell Reeves and they have continued to reside in Hinds County. The father, because of his occupation, later moved to New Orleans, Louisiana, and about three years ago moved to Detroit, Michigan, where he is employed as a radio and television newscaster. He, too, has remarried and both the father and mother are shown by the evidence to be happily married and maintaining homes in apparently good circumstances.

On May 7, 1956, the mother, both individually and as next friend for the minor, filed a petition in the Chancery Court of Hinds County under Section 1269-01, Code of 1942, asking that the minor's name be changed from

Jerry Allen Marshall to Jerry Allen Reeves. On the same day, without notice to the father of the child, the chancellor entered a decree granting this change, but, during the same term of court, the chancellor ten days later rescinded the said decree and directed the issuance of process by publication for the father of the child. Upon receipt of this process the father employed an attorney and resisted the application for change of the child's name. The matter came on for hearing on August 10, 1956, on which date the chancellor entered a decree changing the child's name, and from that decree the father appeals.

At the hearing three witnesses testified in favor of the petition. The minor child said that he has lived with his mother all his life and with his stepfather ever since he and the mother were married. He said that the only time he has ever used the name Jerry Allen Reeves was on an occasion when he attended a Y. M. C. A. camp. He also said that he sees his father about twice a year, the father making trips from Michigan back to Mississippi in order to see and visit with his son. The child also said that as long as the father was living in Hinds County he came to see him regularly, and that since he has been in Michigan he writes to the child about once a week, and in addition occasionally calls him up and talks to him over long distance telephone. He also said that his father sends him presents and does all in his power to keep as closely in contact with him as he can. His testimony is that he loves both his father and his mother and his stepfather.

Mrs. Reeves testified that for sometime after the divorce decree was entered the father did not contribute much to the support of the child, but she admitted that in order to catch up with the delinquencies the father has been sending her double payments each month since he became profitably employed. She also testified that the

father has been making trips to Hinds County to see and visit with the child and that she has never refused to let him see the child. She admitted that the father has regularly sent presents to the child and said that by so doing he has ruined two or three Christmases for her because the presents would arrive just before Christmas and the boy wouldn't then be interested in the Santa Claus which she was providing for him. She said that the commencement of this proceeding was at the instance of the child.

Mr. Reeves testified that he was very much agreeable to the change in name and that he has not tried to influence the boy in the filing of the petition and further that he has never denied Mr. Marshall permission to see Jerry at any time; that there is no friction between them and that he has always tried to be kind to Mr. Marshall.

Mr. Marshall testified that he has been living in Michigan for about three years, immediately prior to which he was living in Louisiana, and before that time he was in Mississippi. He said that he has never abandoned his child or done anything to show an indifference toward his welfare; that after the divorce and as long as he remained in Mississippi he visited the child every few days and further that he also saw him when he was living in Louisiana. He mentioned that he has done what he could for the child from a monetary standpoint; that when he was living here he got behind with his payments and that he has been making double payments in order to catch up with them. He testified that when he was down here he tried to get the boy to visit him in Michigan but that his mother and stepfather said that he didn't want to. Mrs. Reeves herself said that she was unwilling for the boy to visit his father in Michigan and gave as her reason that it was too far away. Mr. Marshall also testified that before Christmas 1953 Mrs. Reeves wrote him not to send the boy anything because it

spoiled her Christmas, but he bought the presents any way and wrote her saying that he would be here Christmas to bring them and she wrote back that she was taking the boy out of town. He also testified that a number of times before he went to Michigan he would write and ask to see his son and that Mrs. Reeves would say it wasn't convenient. He said that he has been denied the right to see his son a number of times and also that he was denied this privilege one Christmas.

The briefs in this case for both parties do not cite a single authority in point and evidently counsel did not cite anything to the court below. We have therefore had to make an investigation of the law ourselves. In 65 C. J. S., under the subject of Names, Section 11, there is a sub-paragraph beginning near the bottom of page 21 and continuing onto page 22 which discusses the question of a change in the name of an infant. That subparagraph says in part: ''Change of name of infant. ██ █ An application to change the name of an infant should be granted only where to do so is clearly in the best interest of the child. ██ █ Ordinarily a change of the name of a minor child of divorced parents should not be granted where it might contribute to the estrangement of the child from its father who has shown a desire to preserve the parental relationship, but such an application has been granted where the father is shown to have been indifferent to the son's material welfare over a period of years and he is, in reality, a stranger and unknown to him.''

In the case of Kay v. Kay, (Ohio) 112 N. E. 2d 562, the court said: ''There are times when an informal change to the surname of the mother's second husband may be desirable, as when the child's father indulges in improper conduct, fails to support, abandons the child, is presently, and in the past has been, indifferent to its welfare, and does not raise a timely objection to the

change of name. ▮▮ ▮ On the other hand, when the father is supporting the child, manifests an abiding interest in the child, and, without delay, by a proper pleading in court objects to a change of name, then the court must decide the issue with a view to what is the best interest of the child.'' After stating the above rule on page 567, the court quoted the above quotation from C. J. S. and then said: ''Applying the above principles to the facts in this case, as brought out by the testimony, the court concludes that the welfare of the child at this time does not call for a change of name from that of his father to the surname of the mother's second husband in whose home the child is now being raised. He is too young to be capable of making a choice of name for himself. At the age of seven years, or in his youth, he is not likely to be embarassed or bothered by the fact that his name is different from that of his mother and her husband. While he has been entered in school for one year under the surname 'Crawford', if he resumes his father's name 'Kay' at the beginning of the next school year the change will hardly be noticed and should cause no longlasting confusion. If right attitudes are suggested by adults, and no stumbling blocks are placed in its way by those about them, a child develops normally and free from frustrations. So it should be on both sides of this child's family.

''The child's father, while far removed from physical contact with his son because of his employment, is supporting the child regularly. There is no testimony that he is not interested in the child or that he does not have paternal affection for him. He has professed a strong desire to have the child bear his name, and without undue delay after the child had been registered in school under a different name he raised objection in this court.

''From time immemorial it has been the custom for male children to bear the family name of their father

throughout life. The paternity of a child cannot be changed. Under the circumstances here presented the Court cannot say that the name of the child should be changed. If, when the boy fully appreciates the circumstances and is capable of selecting a name for himself, he chooses to bear the surname of someone other than his father, he may do so. The Court is convinced that in the meantime it would not contribute to the boy's welfare to permit interference with the usual custom of succession to the paternal surname, or to foster any unnatural barrier between the father and son.''

In the case of Application of Wittlin, 61 N. Y. Sup. 2nd 726, the Court said:

''This is an application made by the mother of the infant, Arthur Christian Klevenz, for an order granting leave to the said infant to assume the name of Arthur Klevenz Wittlin. The infant joins in the application. The boy is sixteen and a half years of age and resides with his mother, Sophie Wittlin, the petitioner herein. That the rights of the infant might be properly safeguarded, the Court conducted a hearing and formal proof has been adduced with respect to the subject matter of this petition.

''The infant and his sister, Mildred, are the issue of the marriage of Arthur J. Klevenz and the petitioner, Sophie Wittlin. The sister is now married and residing with her mother and stepfather. The boy was born on August 10, 1929. The parents separated on June 7, 1933, when he was barely four years of age. Subsequently the mother sought a divorce in the State of New Jersey. On March 31, 1942, in an uncontested proceeding, a decree of divorce was granted for abandonment. About a week later on April 6, 1942, the mother married her present husband, Solomon Wittlin. During the entire period of the separation and up to and including the present moment the father has continued to see the children and

has made some contribution to their support and maintenance. The family appears to have made an unusually favorable adjustment. The mother is happily remarried. The boy is well taken care of in his present home. He evinces strong feeling of regard for his stepfather. He is completing his work in a high school and is looking forward to continuing his education with a view towards ultimately becoming a commercial artist. The Court is satisfied that his mother and stepfather, as well as his natural father, are desirous to, and will continue to, be of reasonable assistance in the furtherance of the boy's education and in making necessary provision for him. Despite the long estrangement of the parents and the remarriage on the part of the mother, the natural bonds of love and affection between the boy and his father survive. There are regular periods of visitation and the relations of the boy and the father show evidences of camaraderie. No rancor seems to exist between the father and the mother and it is obvious to the Court that all sides have made every reasonable effort to salvage as much as possible of the remnants of the family relationship.

"This application is now made for permission to assume the name of the stepfather in place of that of the natural father. The sole basis for the application is the embarassment flowing from the dual name in the household and the necessity of explanation therefor. This situation is the ordinary and foreseeable consequence of broken homes and the children as usual are the innocent victims of the strife. It does not, however, follow that in every case where there is divorce and remarriage that it is in the best interest of the children that the name of the mother's new husband be taken. Rather will it seem to be the duty of the Court to make such determination as will best serve the interest of the infant under all the surrounding circumstances. In this proceeding there

seems to be no factor creating undue or unusual embarassment. The future welfare of the child in his relation to the present household will not be affected by a denial of this application. The stepfather does not urge nor has he inspired the application. The application has its origin primarily in the desire of the mother that her son assume the name of her present husband. It has been joined in by the son in his natural desire to please his mother and to save embarassment for her and for himself. The natural father on the other hand is faced with the prospect of the abandonment of his name by his son despite the fact that he has constantly maintained parental association and has been constant in making provision for support within his means, even though such contributions have been relatively meager.

"In the opinion of the Court it would be most unfortunate to do anything to further impair the altogether too slender bonds which now hold this family together. This father has lost the guardianship of his children. It will be time enough for them to abandon his name when they are free to arrive at a determination uninfluenced by conflicting pressures. While an infant sixteen years of age or over has a right to petition the Court for change of name, the Court nevertheless stands in locus parentis with respect to such infant and may grant such application only where to do so would clearly be in the best interest of the child. The child should not be subjected to the conflicting pressures of competitive loyalties where no real purpose will be served, and substantial harm may result to the satisfactory relations now enjoyed in every direction. Where a parent has abandoned his children or fails to visit them for protracted periods of time or contribute to their support, where continued use of a name may bring shame and disgrace, where the physical welfare of the child may be adversely affected by a denial of the application or

substantial property rights are involved, the Court would have no difficulty in permitting the change of name in the best interest of the infant. In this case the application rests on most tenuous grounds and to grant it may destroy the relationship between this child and his natural father. This the Court feels is not justified by any of the existing circumstances. The application is accordingly denied.''

To the same effect are the cases of In Re Epstein, 121 Misc. Rep. 151, 200 N. Y. Sup. 897; and Petition of Rounick, 47 Pa. Dist. and Co. R. 71.

██ ██ We fully realize and appreciate the fact that at common law any person of mature years can voluntarily change his name without the necessity of a statute such as we have in Mississippi, provided the change is not for a fraudulent purpose and does not interfere with the rights of others. That rule is recognized in the same section of C. J. S. from which we have quoted above and a full and interesting discussion thereof is found in the case of Smith v. U. S. Casualty Co., 197 N. Y. 420, 90 N. E. 947, 26 L. R. A. (N. S.) 1167, 18 Ann. Cas. 701. That case however has no application to the case at bar and it is our conclusion that the authorities which we have above cited conclusively establish the fact that the chancellor was not justified in changing this child's name from that of his father to that of his stepfather, and the decree of the lower court will therefore be reversed and a decree here entered to the effect that the child shall continue to be known as Jerry Allen Marshall. Of course when he reaches his majority there is no reason why he can not change his name to anything he desires. We are here dealing strictly with a change in the name of a minor.

Reversed and judgment here.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.