William C. KING, Jr., Appellant,

v.

Jan T. NEWMAN, Guardian of William C. King, III, et vir, Appellees.

No. 14619.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 11, 1967.

Trueheart, McMillan, Russell & Hoffman, San Antonio, for appellant.

Lang, Cross, Ladon, Oppenheimer & Rosenberg, San Antonio, for appellees.

BARROW, Chief Justice.

This is a suit brought by the mother and stepfather on behalf of a seven-year-old boy to change his name from William C. King, III, to John Tracy Newman. His natural father intervened and contested the change. After a non-jury trial, judgment was entered granting the application. The trial court did order appellees to correct baptismal and other records to show appellant as the boy's father and provided specific visitation rights. The basic question

to be resolved is, under what circumstances, if any, may the trial court change a child's name over the objection of its natural father.

Appellant, William C. King, Jr., and appellee Jan Tinsley Newman were divorced on May 22, 1961, and the custody of their two-year-old son, who is referred to herein as "Trey" as he was called by all parties, was awarded to his mother, with appellant having the right to reasonable visitation. On August 22, 1961, Jan was married to appellee Harry E. Newman, and Trey has made his home with the Newmans continuously since that time. A daughter and a son were subsequently born to the Newmans. The record conclusively demonstrates that there is a very close family relationship among the Newmans and the three children living in the home, with no distinction whatsoever made between Trey and his half sister and half brother. Harry E. Newman has treated Trey as his son and the boy has reciprocated with love and respect. Furthermore, the parents of Harry have treated Trey as their grandchild, and have created a substantial trust for him along with their other grandchildren.

On the other hand, the record establishes a desire on the part of appellant to preserve his parental relationship with his son. He has made the support payments as ordered by the trial court, including an increase granted in 1962, and has reasonably utilized the visitation rights granted him by the court. There is no finding of any misconduct or neglect on his part. Appellant's mother and other members of the family love Trey and are proud of him. Appellant's family name is well and favorably known in this community.

It is apparent from the record and, in fact, the Newmans both testified that they desire the full responsibility of Trey to the total exclusion of his natural father. They testified that since their marriage Trey has been known under the surname of Newman. Obviously, a child of his tender years could not do this without the active assistance and encouragement of the Newmans. In 1963, Trey was baptized in the Episcopal Church under the name of "John Tracy Newman," with Harry E. Newman designated as the father. In 1964, he was enrolled in the kindergarten as "John Tracy Newman," again with Harry listed as his father. In 1965 he was enrolled in the first grade in the same manner, and it was not until near the end of the school year that Trey's teacher knew of his natural father. His playmates refer to him as "Trey Newman." The records of Trey's doctor were changed by Mrs. Jan Newman to reflect the name "Trey Newman." All of this was done without the knowledge or consent of appellant or any court.

In October, 1966, Mrs. Jan Newman contacted appellant with the request that he consent[1] to the adoption of Trey by Harry. When appellant refused, she informed him of the above-mentioned changes in Trey's identity. Appellant immediately verified this with the Church and school, and requested the proper authorities in each instance to correct their records to show that he is the natural father of Trey. Shortly thereafter appellees brought this suit on behalf of Trey and refused appellant his visitation rights.

The right of a custodial mother to change the surname of a minor after she remarries has been the subject of frequent judicial consideration throughout the United States. In 53 A.L.R.2d 914, is a comprehensive review of the authorities under the annotation "Rights and remedies of parents inter se with respect to the names of their children." The general rule is stated as follows: "The courts have generally recognized that the father, who is ordinarily the objecting party, has a protectible interest in having his child bear the parental surname in accordance with the usual cus-

---

1. See Gunn v. Cavanaugh, 391 S.W.2d 723 (Tex.Sup.1965).

tom, even though the mother may have been awarded custody of the child. So, a change of name will not be authorized against the father's objection, merely to save the mother and child minor inconvenience or embarrassment. However, where the child's substantial interests require a change of name, as where the father's misconduct has been such as to justify a forfeiture of his rights or where his name is positively deleterious to the child, the change may be permitted."

▮ Art. 5929, Vernon's Ann.Civ.St., authorizes the district court to change the name of a minor upon application being made by the guardian or next friend "if the facts alleged and proven satisfy him that such change will be for the benefit and interest of the minor." It has been held that the burden is on applicant under this statute to prove by evidence satisfactory to the court that the change would be for the benefit and interests of the minor. Plass v. Leithold, 381 S.W.2d 580 (Tex. Civ.App.—Dallas 1964, no writ); Ex parte Taylor, 322 S.W.2d 309 (Tex.Civ. App.—El Paso 1959, no writ). Under these authorities, the action of the trial court should be upheld in the absence of a showing of an abuse of discretion.

The trial court held that although appellant has a protectible interest in having his child bear his name, this interest and his desire is secondary to the best interest of the child. The court concluded that upon full and satisfactory evidence the best interests of the child are served by granting the application changing his two given names as well as his surname.

Under his first two points appellant urges that this conclusion was an abuse of discretion in that it was not in the best interests of the child to alienate him from his natural father. Further, it is urged, under his third point, that such action is in violation of his rights under the Constitution in that his tie with the child could only be forfeited by misconduct or unfitness. Under appellant's fourth point he urges that the

boy's constitutional rights were violated by this action. Under the fifth point he urges that the trial court erred in changing the name because it amounted to a reward of appellees' actions in falsifying the name and parentage of the child so as to constitute a fraud on the child, appellant and the courts.

▮ These points are all somewhat interrelated and therefore will be considered together. The basic problem is related to the conflict between the protectible interest of the parent, or "natural right rule," and the "best interest rule," which is present in much child custody litigation. Insofar as custody is concerned, the Texas Supreme Court has adopted this position: The best interest of the child is the main consideration, regardless of the relative rights of the contesting parties. The law will presume that the natural parents are the ones best qualified to serve those interests, but the third party can rebut this presumption by proving that the natural parent is morally unfit to have custody or that, for other reasons, the best interest of the child demands that his custody be awarded to the third party. Herrera v. Herrera, 409 S. W.2d 395 (Tex.Sup.1966); Hendricks v. Curry, 401 S.W.2d 796 (Tex.Sup.1966); Mumma v. Aguirre, 364 S.W.2d 220 (Tex. Sup.1963); 19 Baylor Law Rev. 299.

▮ Inasmuch as this application for change of name of the minor presents somewhat the same problem involving the future of this young boy, the trial court properly considered the best interest of the child rather than the father's right as the primary consideration. This did not violate any of the father's constitutional rights. It should not be overlooked, however, that all courts considering the question have held that the best interest of a child is usually not served if the change of name contributes to a further estrangement from his father who desires to preserve the parental relationship. Plass v. Leithold, supra; Mark v. Kahn (Mass.), 131 N.E.2d 758, 53 A.L.R.2d 908; In re Shipley, 26 Misc.2d

204, 205 N.Y.S.2d 581; Degerberg v. McCormick, 41 Del.Ch. 46, 187 A.2d 436; Reed v. Reed (Okl.), 338 P.2d 350; Marshall v. Marshall, 230 Miss. 719, 93 So.2d 822; 65 C.J.S. Names § 11(2).

The trial court's conclusion that the best interests of the child are served by granting this application is based upon the finding of fact that the child has established his identity under the name of "John Tracy Newman" and that it would be humiliating, embarrassing, confusing, and, in all reasonable probability, disruptive of harmony in his home life for him to go under a different name from the other members of his family, and, further, that in all reasonable medical probability the impact of changing his name now might have a detrimental effect on his personality as he grows older.

At the time of the trial, Trey was about seven and a half years of age. For over five years, he had lived in and been identified as a member of the Newman family in a close relationship. All the testimony establishes that the Newman family is a very fine Christian family and that Trey has become an integral part of it. There is nothing in the record to show why his two given names were changed, other than to sever all identity with his natural father. In any event, the undisputed evidence is that all persons know him as "Trey Newman." The pediatrician, who has treated Trey since birth, testified that it might be detrimental to "change" his name back to King, since Trey has established his identity with this family unit. A clinical psychologist, who was employed by the Newmans in December, 1966, for the purpose of giving expert testimony in this case, expressed the same opinion.

It is true, as urged by appellant, that this identity was built up largely as a result of the actions of the boy's mother in improperly identifying him at home, at school and even on his baptismal record. Yet, as was said in Mumma v. Aguirre, supra, 364 S. W.2d p. 221, " * * * our courts do not normally concern themselves with the righteousness of claims to custody of children; their paramount concern is with the best interests of the children."

■ This action serves to demonstrate that the child's best interests required the appointment of a guardian ad litem to represent him. He is not old enough to understand the serious consequences involved in this change of name. We cannot conceive a seven-year-old child telling his natural father that he did not want to go under his father's name, without receiving encouragement and suggestion from adults in a position of influence over him. Notwithstanding the sincerity and purpose of his mother and stepfather in bringing this suit, it is obvious that there is a possible conflict between the best interests of this child and that of the Newmans. They admittedly are interested in severing all ties between the child and his natural father. This is conclusively shown not only by their admissions at this trial but also by their action in changing even his given names without reason. Certainly, the child would have little to gain in a personal vendetta between his natural parents. Despite the testimony of the medical experts as to the desirability of severing all ties with a natural father who had not forfeited his rights, our law still presumes to the contrary. In this situation, the Newmans were not proper next friends for the minor plaintiff and the trial court should have appointed a guardian ad litem on behalf of said minor child.

Rule 173, Texas Rules of Civil Procedure, provides that when a minor is represented by a next friend or guardian who appears to the court to have an interest adverse to such minor, the court shall appoint a guardian ad litem for such minor. This rule has been held to be mandatory. King v. Payne, 156 Tex. 105, 292 S.W.2d 331, 335 (1956); Wallis v. Stuart, 92 Tex. 568, 50 S.W. 567 (1899); Jaynes v. Lee, 306 S.W.2d 182 (Tex.Civ.App.—Texarkana 1957, no writ); McDonald, Texas Civil Practice, § 3.09.3. See also "P" v. Dept. of Health, 200 Misc.

1090, 107 N.Y.S.2d 586. In Cooper v. Liverman, 406 S.W.2d 927, 931 (Tex.Civ.App. —Texarkana 1966, no writ) the Court held that fathers of minors who had adverse interests to said minors were not proper next friends. In remanding the case, the Court said: "We hold that under such circumstances, even though the matter was not called to the attention of the trial court, that nevertheless a guardian ad litem should have been appointed to represent the interests of said minors."

The judgment of the trial court is reversed and the cause remanded.