## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00318-SCT

*JESSICA NICOLE RICE*

*v.*

*SCOTT THOMAS MERKICH*

DATE OF JUDGMENT:      02/03/2009
TRIAL JUDGE:      HON. CYNTHIA L. BREWER
COURT FROM WHICH APPEALED:      MADISON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:      JEFFREY P. HUBBARD
      STACEY L. STRAIN
ATTORNEYS FOR APPELLEE:      T. JACKSON LYONS
      DAVID EDWIN JAMES
NATURE OF THE CASE:      CIVIL - DOMESTIC RELATIONS
DISPOSITION:      AFFIRMED - 05/06/2010
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Jessica Rice appeals the judgment of the Madison County Chancery Court changing the surname of her minor child to that of the father pursuant to a paternity action. As this is a case of first impression, this Court must interpret Mississippi Code Section 93-9-9(1) of the Mississippi Uniform Law on Paternity. For the reasons stated herein, we affirm the judgment of the chancellor.

## FACTS AND PROCEDURAL HISTORY

¶2. Jessica Rice and Scott Merkich had been dating on and off for about two years when they discovered that Rice was approximately eight weeks pregnant in June 2007. Rice and

Merkich were living together at the time of the pregnancy. Rice and Merkich had planned to get married, but they ultimately ended the relationship on August 25, 2007, and Rice moved in with her parents. Rice admitted that she had dated other men while she and Merkich were broken up, and Merkich questioned the child's paternity. However, the parties remained in contact after the break-up. Prior to ending the relationship, Merkich accompanied Rice on two doctor's visits. After the break-up, Merkich planned to accompany Rice to at least one other doctor's visit, but Rice changed the date of the appointment without informing him of the new time. Merkich also contributed to the payment of two medical bills related to the pregnancy.

¶3. The baby was due January 22, 2008, but was born on January 3, 2008. Rice did not contact Merkich when she went into labor and, thus, he was not present when she gave birth to the baby girl, which Rice named Presley Annsleigh Rice. Rice did not inform Merkich of Presley's birth until January 6, 2008, the day after she was discharged from the hospital.

¶4. On January 16, 2008, Merkich filed a Petition for Determination of Paternity, seeking paternity testing. The parties agreed to DNA testing, and the results established a 99.98 percent probability that Merkich is Presley's father. Thereafter, Merkich filed in that same action on March 7, 2008, a Complaint for Determination of Child Custody and Visitation. Merkich asked for joint legal and physical custody of Presley, asked that her surname be changed to Merkich, and stated that he was willing to pay his statutorily-required child-support obligation. Rice filed a Response to Complaint for Determination of Child Custody and Visitation and Respondent's Counterclaim for Back Child Support and Other Relief on April 1, 2008. Rice denied that Merkich should be awarded joint care, custody and control

2

of the minor child. Rice also denied that Presley's surname should be changed to Merkich.

Rice admitted that Merkich should pay child support and counterclaimed for back child

support. Merkich filed an answer on April 2, 2008.

¶5. After a hearing for temporary relief, the chancellor entered a Temporary Order on July

10, 2008, finding that Rice and Merkich would share joint legal custody of Presley and that

Rice would maintain primary physical custody subject to Merkich's reasonable visitation

rights. The chancellor also ordered temporary child support and set the matter for trial on

January 13, 2009. On the date of trial, Rice and Merkich filed a joint stipulation that they

agreed on all issues except those identified, which included Presley's surname. The trial

proceeded on those issues, including Presley's surname. After hearing evidence and

testimony, the chancellor found that Presley's surname should be Merkich. Subsequently,

Rice filed this appeal.

**ANALYSIS**

¶6. Rice raises the following issues:

**I.** **Whether the trial court erred in denying Defendant's Motion for Directed Verdict after Plaintiff failed to prove by clear and convincing evidence that it is in the minor child's best interests for the trial court to change her surname.[1]**

**II.** **Whether the trial court erred in granting Plaintiff's petition to change the surname of the child pursuant to Miss. Code Ann. § 93-9-9(1) absent proof by clear and convincing evidence that it is in the minor child's best interests to do so.**

---

[1]A motion for directed verdict under Rule 50 of the Mississippi Rules of Civil Procedure applies only in cases tried by a jury. Miss. R. Civ. P. 50 cmt. However, while Rice should have filed a motion to dismiss pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure, she is not precluded from challenging the weight or sufficiency of the evidence supporting the judgment against her. *Clements v. Young*, 481 So. 2d 263, 268-69 (Miss. 1985); Miss. R. Civ. P. 41(b).

¶7. This Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." **Powers v. Tiebauer**, 939 So. 2d 749, 752 (Miss. 2005). "When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of law." **Id**.

¶8. Mississippi Code Section 93-9-9 of the Mississippi Uniform Law on Paternity states, in relevant part: "In the event of court-determined paternity, the surname of the child shall be that of the father, *unless* the judgment specifies otherwise." Miss. Code Ann. § 93-9-9(1) (Rev. 2004) (emphasis added). Although the statute does not delineate those circumstances where the "judgment specifies otherwise," it is reasonable to conclude that those circumstances should be examined in light of the best interest of the child, if, and only if, this is a contested issue. In other words, "in the event of court-determined paternity," where a party to the action contends that the surname should not be "that of the father," then, and in that event, that party must prove by a preponderance of the evidence that it is in the child's best interest that the surname not be "that of the father." We note that the parties assert a clear and convincing evidence burden of proof and that in **Pendleton v. Leverock**, 23 So. 3d 424, 431 (Miss. 2009), this Court referenced a clear and convincing standard with regard to a custody case involving a natural parent and a third party. However, we find that a preponderance of the evidence is the appropriate burden of proof in the instant case. Moreover, child-custody and adoption cases are categorically different from cases involving changing the surname of a child to the surname of the natural father pursuant to statute.

4

¶9. In the instant case, the statute's plain language clearly indicates that Presley's surname shall be Merkich unless Rice proves by a preponderance of the evidence that it is in the child's best interest that her surname not be Merkich. Such an interpretation is consistent with and supported by other relevant statutory provisions and Department of Health rules. For example, Mississippi Code Section 93-9-9(3) states:

> Upon application of both parents to the State Board of Health and receipt by the State Board of Health of a sworn acknowledgement of paternity executed by both parents subsequent to the birth of a child born out of wedlock, the birth certificate of the child shall be amended to show such paternity if paternity is not shown on the birth certificate. *Upon request of the parents for the legitimization of a child under this section, the surname of the child shall be changed on the certificate to that of the father*.

Miss. Code Ann. § 93-9-9(3) (Rev. 2004) (emphasis added).

¶10. Mississippi Code Section 41-57-23(2) of the Vital Statistics Chapter provides that:

> If a child is born to a mother who was not married at the time of conception or birth, or at any time between conception and birth, and the natural father acknowledges paternity, the name of the father shall be added to the birth certificate if a notarized affidavit by both parents acknowledging paternity is received on the form prescribed or as provided in Section 93-9-9. *The surname of the child shall be that of the father except that an affidavit filed at birth by both listed mother and father may alter this rule.* In the event the mother was married at the time of conception or birth, or at any time between conception and birth, or if a father is already listed on the birth certificate, action must be taken under Section 41-57-23(1) to add or change the name of the father.

Miss. Code Ann. § 41-57-23(2) (Rev. 2009) (emphasis added). Rice testified that she had failed to disclose to Merkich that Presley had been born until after she had been released from the hospital. If Rice had informed Merkich earlier, and he had acknowledged paternity by completing the proper forms at the hospital, then, pursuant to this section, Presley's

surname would have been Merkich unless both Rice and Merkich had signed an affidavit stating otherwise.

¶11.    Such a finding is also consistent with the Rules Governing the Registration and Certification of Vital Events by the Mississippi State Department of Health.  Rule 103.04 states:

> This section details the conditions under which the father's name may be entered on the certificate, the specification of the child's name under each condition, and conditions under which the surname of the child may be different from either the father's surname or mother's surname if no father is listed.  Traditionally, a child assumes the legal surname of his or her father as listed on the birth certificate, or of the mother if no father is listed.  When the surname given a child is not traditional, a signed statement, witnessed by a hospital representative, signed by both parents or the mother if no father is listed, and filed with the birth certificate shall be required, but the certificate shall not be considered nor marked as having been amended.

Miss. Dep't of Health R. 103.04, *available at* Miss. State Dep't of Health Website, http://www.msdh.state.ms.us/ (last accessed May 3, 2010).

¶12.    Further, Rule 18 states:

> The surname of the child shall be determined in the following manner:
> 1.  **Mother married**.  If the mother was married at the time of conception or birth, or at any time between conception and birth, the surname of the child shall be that of the husband except that a statement, signed by both the listed mother and husband, and witnessed by a health facility representative, filed at the same time as the birth certificate is filed may alter this rule.
> 2.  **Mother not married; no acknowledged father**.  If the mother was not married at the time of conception or birth, or at any time between conception and birth, the surname of the child shall be that of the legal surname of the mother, except that a statement, signed by the listed mother and witnessed by a health facility representative, filed at the same time the birth certificate is filed may alter this rule.
> 3.  **Mother not married; acknowledged father**.  If the mother was not married at the time of conception or birth, or at any time between conception and birth, and the natural father acknowledges such paternity, the surname of the child shall be that of the father except that a statement signed by both the

6

listed mother and the acknowledged father, witnessed by a health facility representative, and filed at the same time the birth certificate is filed may alter this rule. The Acknowledgement of Paternity affidavit may be rescinded under Rule 19 -- Rescission of acknowledgement of paternity, upon rescission the father's information will be removed from the birth certificate and the surname of the child will be changed to the legal surname of the mother at the time of birth.

4. **Court-determined paternity**. In the event of court-determined paternity, the surname of the child shall be that of the father, unless the judgment specifies otherwise.

Miss. Dep't of Health R. 18, *available at* Miss. State Dep't of Health Website, http://www.msdh.state.ms.us/ (last accessed May 3, 2010).

¶13. The only evidence offered by Rice that Presley should not have the surname Merkich is possible embarrassment and confusion for Rice and Presley to have different names. Specifically, at the hearing to determine Presley's surname, Rice testified:

> A. Yeah. I'm her mother, and I think it would be embarrassing if I dropped her off at school, picked her up at school, went to church – they don't understand, you know, maybe last name, but I know that does happen in the world today. But I want her to have the last name of Rice because that's – she's my little girl, and I wanted her this whole time. She –
> Q. So I understand – I'm sorry. I didn't meant to cut you off.
> A. And you asked me if there's any disadvantages. I mean, the disadvantage is she has a name. Her last name is Rice, and I'm sure she would be confused down the road why her birth certificate says something different. I don't know how else to answer that question.

¶14. Later, Rice testified as follows:

> Q. You think it would be unusual, or do you think that Presley would be at some disadvantage if she had a different last name than that of her mother?
> A. A disadvantage? Of course not. I would love her just the same no matter what her name is. A disadvantage? No. But I see the advantages of her having my last name. I have a healthy child, and that's what's important.

7

¶15. Rice also testified that she would have taken Merkich as a last name if she and Merkich had married. Further, Rice testified that Merkich is a good father, who is very involved in Presley's life and spends as much time with her as possible.

¶16. We find that Rice failed to prove by a preponderance of the evidence that it is in the child's best interest that her surname not be Merkich. In so finding, we reject Rice's argument that a best-interest-of-the-child analysis must be employed in each paternal surname change pursuant to *Marshall v. Marshall*, 93 So. 2d 822, 825 (Miss. 1957). An on-the-record, best-interest determination before changing a child's surname to that of the court-determined father in paternity cases is not required pursuant to Section 93-9-9(1) and would serve only to impede the process of "legitimization" of children born out of wedlock. Further, *Marshall* did not fall within the purview of Section 93-9-9(1), which, again, is part of the Mississippi Uniform Law on Paternity. Paternity was not an issue in *Marshall*. Instead, the issue in *Marshall* pertained to a name-change action subsequent to a divorce in which the mother sought to change the surname of an eleven-year-old child from that of his father to that of the step-father. Notwithstanding that *Marshall* is factually distinguishable, this Court's analysis in *Marshall* is not applicable. Again, *Marshall* involved a petitioner attempting to change the child's surname to a different surname subsequent to a divorce and a remarriage.

¶17. Further, the cases from Arkansas and Tennessee cited by the dissent are distinguishable, as those states do not have similarly worded statutes. The applicable statute in *Huffman v. Fisher*, 38 S.W. 3d 327, 329 (Ark. 2001), states: "In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father

8

and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court." Ark. Code Ann. § 20-18-401(e)(3) (Rev. 2005). The Tennessee statutes discussed in ***Barabas v. Rogers***, 868 S.W. 2d 283, (Tenn. Ct. App. 1993), contain a variety of options for surnames and time periods for so choosing, none of which is similar to Section 93-9-9. *See* Tenn. Code Ann. § 68-3-305 (Rev. 2006).

¶18. In the instant case, there is absolutely nothing in the record to support any conclusion that the chancellor interpreted the statute to mean that she had no choice other than to change the child's surname to Merkich. In fact, the chancellor had a hearing on that issue because the mother objected to the child's surname being changed. After "having heard and considered the joint stipulation made by the parties, testimony and evidence presented by both parties and the law presented by respective counsel and the argument thereof," the chancellor found that the surname of the child shall be Merkich. (Judgment, Feb. 4, 2009). Further, the chancellor specifically stated on the record that she found no reason to deny the request to change the name to Merkich pursuant to statute. Clearly, the chancellor recognized that there may be cases where the general rule requiring the surname to be that of the father does not apply. However, the chancellor also correctly found that this was not one of those cases. The chancellor also correctly found that Rice had not proven by a preponderance of the evidence that it was in the child's best interest that her name not be Merkich.

¶19. For the reasons stated herein, we find that the chancellor's decision is supported by substantial evidence, was not manifestly wrong, clearly erroneous or an abuse of discretion. Therefore, we affirm the judgment of the Madison County Chancery Court.

9

¶20. **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. LAMAR, J., DISSENTS WITH SEPARATE OPINION JOINED BY DICKINSON, J.**

**LAMAR, JUSTICE, DISSENTING:**

¶21. If, as this Court has held for generations, the "polestar" consideration in matters dealing with children is the best interest of the child,[2] then I must begin this dissent by asking the question: Was the name change ordered by the chancellor in the best interest of the child, Presley Annsleigh Rice? We, of course, don't know, because the chancellor was clearly under the erroneous impression that she was statutorily required to order the name change. Because I believe our chancellors should change the name of a child only when doing so is found to be in the best interest of the child, I respectfully dissent.

---

[2]*See e.g. **In re Dissolution of Marriage of Leverock & Hamby***, 23 So. 3d 424, 433-34 (Miss. 2009) (Chancellor's decision to sua sponte ignore admissions in child-custody matter was error "committed with a 'proper result in mind,' the polestar consideration of the best interests of the child.") (*citing **Gilcrease v. Gilcrease***, 918 So. 2d 854, 856 (Miss. Ct. App. 2005)); ***Lowrey v. Lowrey***, 25 So. 3d 274, 281 (Miss. 2009) ("Regarding child custody, the best interest of the child is the polestar factor.") (citing ***Albright v. Albright***, 437 So. 2d 1003, 1005 (Miss. 1983)); ***S.G. v. D.C.***, 13 So. 3d 269, 279 (Miss. 2009) (Where the safety and well-being of children are not being adequately protected, refusal to allow intervention of third parties in custody battle would be "irresponsible and contrary to the polestar consideration in such cases of the best interests of the children."); ***W.A.S. v. A.L.G.***, 949 So. 2d 31, 35 (Miss. 2007) ("The best interest of the child is a polestar consideration in the granting of any adoption") (quoting ***In re V.M.S.***, 938 So. 2d 829, 835-36 (Miss. 2006)); ***Crider v. Crider***, 904 So. 2d 142, 144 (Miss. 2005) ("Mississippi case law has clearly declared time and time again that the polestar consideration in all cases dealing with child custody and visitation is the best interest and welfare of the child.") (citations omitted); ***Robison v. Lanford***, 841 So. 2d 1119, 1122 (Miss. 2003) ("it is the responsibility of this Court, like the chancellor, to make the best interest of the child our "polestar" consideration") (citing ***Hensarling v. Hensarling***, 824 So. 2d 583, 587 (Miss. 2002)).

¶22.    The issue presented is whether – upon a finding of paternity – our statutes mandate that this child's surname be changed to her father's name, regardless of whether such change is in the child's best interest.  I would remand for a hearing to consider the testimony presented in light of the best interest of the child, as the record clearly shows that the chancellor did not apply a best-interest analysis.  In my view, when there is a contested request for a name change following a finding of paternity, the chancellor should perform a best-interest analysis, with the moving party (the one seeking to change a child's name) having the burden of proof to show by a preponderance of the evidence that the name change is in the child's best interest.

¶23.    Mississippi Code Section 93-9-9(1) provides in relevant part that "In the event of court-determined paternity, the surname of the child shall be that of the father, *unless the judgment specifies otherwise*."  Miss. Code Ann. § 93-9-9(1) (Rev. 2004) (emphasis added). Clearly, the Legislature contemplated that there would be occasions when a chancellor would "specify otherwise."  The majority fails to provide much-needed guidance to the bench and the bar as to appropriate considerations when faced with these disputes.  Despite the majority's finding that "it is reasonable to conclude that those circumstances should be examined in light of the best interest of the child" (Maj. Op. ¶8), it later contradicts itself by concluding that:

> [a]n on-the-record, best-interest determination before changing a child's surname to that of the court-determined father in paternity cases is not required pursuant to Section 93-9-9(1) and would serve only to impede the process of "legitimization" of children born out of wedlock.

(Maj. Op. ¶16). This is double-speak. Clearly, a best-interest analysis should govern the chancellor's decision in these disputes and in all matters touching on the welfare of a child. Contrary to the majority's assertion, I fail to see how making a proper record for appellate review would impede the process of "legitimization" of children born to unmarried parents.

¶24. More than fifty years ago, this court held that "'[a]n application to change the name of an infant should be granted only where to do so is clearly in the best interest of the child.'" *Marshall v. Marshall*, 93 So. 2d 822, 825 (Miss. 1957) (quoting 65 C.J.S. *Names* § 11); *see* 65 C.J.S. *Names* § 23 (2009). Although factually distinguishable, the *Marshall* court established that a best-interest standard is applicable to a minor's name change when such a change is contested. *Id.* at 825, 827.

¶25. The majority also finds (without citation to any authority) that the burden of proof in this case rests with the mother (the nonmoving party) to prove that the child's name should not be changed. *But see* **Huffman v. Fisher**, 38 S.W. 3d 327, 329 (Ark. 2001) ("The burden of proof is on the moving party to demonstrate that the change is in the best interest of the child."); **Barabas v. Rogers**, 868 S.W. 2d 283, 287 (Tenn. Ct. App. 1993) (same). There is no dispute that this child's name was properly recorded on her original birth certificate as Presley Annsleigh Rice. Notably, Rice testified that Merkich was not listed on the birth certificate, because he had denied that Presley was his child and "had taken himself out of [her] life months prior." Further, the Mississippi Department of Health has provided that, "[i]f the mother was not married at the time of conception or birth, or at any time between

12

conception and birth, *the surname of the child shall be that of the legal surname of the mother . . . .*"[3]

¶26.    Without explicitly so finding, the majority seems to accept Merkich's argument that Section 93-9-9(1) creates a presumption that bearing the paternal surname is in the best interest of the child.  In my opinion, no presumption exists in favor of either party and any such legislatively created presumption would raise serious Equal Protection concerns.[4]  Yet without finding any presumption exists, the majority inexplicably refuses to place the burden of proof on the party seeking relief from the court.

¶27.    The learned chancellor clearly made her decision based on her interpretation of the statute, that is, that she had no option but to give the child her father's name:

> Scott Thomas Merkich shall be listed as the biological father of the minor child upon the birth certificate of the child.  And pursuant to the statutes of our state, now having determined paternity, the surname of the child shall be that of the father, finding no reason for which to deny said name request pursuant to the statute.  The statute is very clear to this Court, indicating the word "shall."  Therefore, the minor child shall, therefore, be known as Presley Annsleigh Merkich.

---

[3]Miss. Dep't of Health R. 18(2) (emphasis added), *available at* Miss. State Dep't of Health Website, http://www.msdh.state.ms.us/ (enter Rules Governing the Registration and Certification of Vital Events in search box) (last accessed April 5, 2010); *cf.* **Hemphill-Weathers v. Farrish**, 779 So. 2d 167, 172 (Miss. Ct. App. 2001) ("[T]he natural mother of [a child born out of lawful matrimony], when no father has taken steps to prove or formally assert his paternity, is the custodial parent with the legal authority to make day to day decisions concerning the welfare of the minors.").

[4]*See* **Miss. Univ. for Women v. Hogan**, 458 U.S. 718, 725-26 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) (requiring a close relationship between a state's objective and means in order to assure that the "validity of a [gender] classification is determined through reasoned analysis rather than through the mechanical application of traditional, often inaccurate, assumptions about the proper roles of men and women"); *see also* **Rio v. Rio**, 504 N.Y.S.2d 959, 962 (N.Y. Sup. 1986) (finding that "Equal Protection arguments against a paternal surname presumption are most persuasive").

Her interpretation was erroneous. Accordingly, I would remand this case for the chancellor to consider the proof in light of the best interest of this child. I realize that, upon remand, the chancellor might reach the same conclusion. I want to be clear that it is not the result in this case that concerns me. It is the fact that the decision was made without a finding that it was in the best interest of the child.

¶28. This child was an infant of less than a year old when this dispute found its way to our courts. She was much too young even to know her last name. However, the decision handed down today will apply as well to children much older than this child. I can envision that in many of those cases there may be very legitimate reasons why it would not be in a child's best interest to have his or her surname changed. Our bench and bar deserve some clear guidance when faced with those situations, and unfortunately they are not getting it today. For the foregoing reasons, I dissent.

**DICKINSON, J., JOINS THIS OPINION.**