LAMAR, Justice,
dissenting:
1121. If, as this Court has held for generations, the “polestar” consideration *561 in matters dealing with children is the best interest of the child,[2] then I must begin this dissent by asking the question: Was the name change ordered by the chancellor in the best interest of the child, Presley Annsleigh Rice? We, of course, don’t know, because the chancellor was clearly under the erroneous impression that she was statutorily required to order the name change. Because I believe our chancellors should change the name of a child only when doing so is found to be in the best interest of the child, I respectfully dissent.
¶ 22. The issue presented is whether— upon a finding of paternity- — our statutes mandate that this child’s surname be changed to her father’s name, regardless of whether such change is in the child’s best interest. I would remand for a hearing to consider the testimony presented in light of the best interest of the child, as the record clearly shows that the chancellor did not apply a best-interest analysis. In my view, when there is a contested request for a name change following a finding of paternity, the chancellor should perform a best-interest analysis, with the moving party (the one seeking to change a child’s name) having the burden of proof to show by a preponderance of the evidence that the name change is in the child’s best interest.
¶23. Mississippi Code Section 93-9-9(1) provides in relevant part that “In the event of court-determined paternity, the surname of the child shall be that of the father, unless the judgment specifies otherwise.” Miss.Code Ann. § 93-9-9(1) (Rev. 2004) (emphasis added). Clearly, the Legislature contemplated that there would be occasions when a chancellor would “specify otherwise.” The majority fails to provide much-needed guidance to the bench and the bar as to appropriate considerations when faced with these disputes. Despite the majority’s finding that “it is reasonable to conclude that those circumstances should be examined in light of the best interest of the child” (Maj. Op. ¶ 8), it later contradicts itself by concluding that:
[a]n on-the-record, best-interest determination before changing a child’s surname to that of the court-determined father in paternity cases is not required pursuant to Section 93-9-9(1) and would serve only to impede the process of “legitimization” of children born out of wedlock.
(Maj. Op. ¶ 16). This is double-speak. Clearly, a best-interest analysis should *562 govern the chancellor’s decision in these disputes and in all matters touching on the welfare of a child. Contrary to the majority’s assertion, I fail to see how making a proper record for appellate review would impede the process of “legitimization” of children born to unmarried parents.
¶ 24. More than fifty years ago, this court held that “ ‘[a]n application to change the name of an infant should be granted only where to do so is clearly in the best interest of the child.’ ” Marshall v. Marshall, 230 Miss. 719, 93 So.2d 822, 825 (1957) (quoting 65 C.J.S. Names § 11); see 65 C.J.S. Names § 23 (2009). Although factually distinguishable, the Marshall court established that a best-interest standard is applicable to a minor’s name change when such a change is contested. Id. at 825, 827.
¶ 25. The majority also finds (without citation to any authority) that the burden of proof in this case rests with the mother (the nonmoving party) to prove that the child’s name should not be changed. But see Huffman v. Fisher, 343 Ark. 737, 38 S.W.3d 327, 329 (2001) (“The burden of proof is on the moving party to demonstrate that the change is in the best interest of the child.”); Barabas v. Rogers, 868 S.W.2d 283, 287 (Tenn.Ct.App.1993) (same). There is no dispute that this child’s name was properly recorded on her original birth certifícate as Presley Amns-leigh Rice. Notably, Rice testified that Merkich was not listed on the birth certificate, because he had denied that Presley was his child and “had taken himself out of [her] life months prior.” Further, the Mississippi Department of Health has provided that, “[i]f the mother was not married at the time of conception or birth, or at any time between conception and birth, the surname of the child shall be that of the legal surname of the mother....”[3]
¶ 26. Without explicitly so finding, the majority seems to accept Merkich’s argument that Section 93-9-9(1) creates a presumption that bearing the paternal surname is in the best interest of the child. In my opinion, no presumption exists in favor of either party and any such legislatively created presumption would raise serious Equal Protection concerns.[4] Yet without finding any presumption exists, the majority inexplicably refuses to place the burden of proof on the party seeking relief from the court.
¶ 27. The learned chancellor clearly made her decision based on her interpretation of the statute, that is, that she had no option but to give the child her father’s name:
Scott Thomas Merkich shall be listed as the biological father of the minor child upon the birth certificate of the child. Amd pursuant to the statutes of *563 our state, now having determined paternity, the surname of the child shall be that of the father, finding no reason for which to deny said name request pursuant to the statute. The statute is very clear to this Court, indicating the word “shall.” Therefore, the minor child shall, therefore, be known as Presley Annsleigh Merkich.
Her interpretation was erroneous. Accordingly, I would remand this case for the chancellor to consider the proof in light of the best interest of this child. I realize that, upon remand, the chancellor might reach the same conclusion. I want to be clear that it is not the result in this case that concerns me. It is the fact that the decision was made without a finding that it was in the best interest of the child.
¶ 28. This child was an infant of less than a year old when this dispute found its way to our courts. She was much too young even to know her last name. However, the decision handed down today will apply as well to children much older than this child. I can envision that in many of those cases there may be very legitimate reasons why it would not be in a child’s best interest to have his or her surname changed. Our bench and bar deserve some clear guidance when faced with those situations, and unfortunately they are not getting it today. For the foregoing reasons, I dissent.
DICKINSON, J., JOINS THIS OPINION.

. See e.g. In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d 424, 433-34 (Miss.2009) (Chancellor’s decision to sua sponte ignore admissions in child-custody matter was error "committed with a ‘proper result in mind,’ the polestar consideration of the best interests of the child.”) (citing Gilcrease v. Gilcrease, 918 So.2d 854, 856 (Miss.Ct.App.2005)); Lowrey v. Lowrey, 25 So.3d 274, 281 (Miss.2009) ("Regarding child custody, the best interest of the child is the polestar factor.”) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)); S.G. v. D.C., 13 So.3d 269, 279 (Miss.2009) (Where the safety and well-being of children are not being adequately protected, refusal to allow intervention of third parties in custody battle would be "irresponsible and contrary to the polestar consideration in such cases of the best interests of the children.”); W.A.S. v. A.L.G., 949 So.2d 31, 35 (Miss.2007) ("The best interest of the child is a polestar consideration in the granting of any adoption”) (quoting In re V.M.S., 938 So.2d 829, 835-36 (Miss.2006)); Crider v. Crider, 904 So.2d 142, 144 (Miss.2005) ("Mississippi case law has clearly declared time and time again that the polestar consideration in all cases dealing with child custody and visitation is the best interest and welfare of the child.”) (citations omitted); Robison v. Lanford, 841 So.2d 1119, 1122 (Miss.2003) (“it is the responsibility of this Court, like the chancellor, to make the best interest of the child our "polestar” consideration”) (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (Miss.2002)).

. Miss. Dep’t of Health R. 18(2) (emphasis added), available at Miss. State Dep't of Health Website, http://www.msdh.state.ms.us/ (enter Rules Governing the Registration and Certification of Vital Events in search box) (last accessed April 5, 2010); cf. Hemphill-Weathers v. Farrish, 779 So.2d 167, 172 (Miss.Ct.App.2001) ("[T]he natural mother of [a child born out of lawful matrimony], when no father has taken steps to prove or formally assert his paternity, is the custodial parent with the legal authority to make day to day decisions concerning the welfare of the minors.”).

. See Miss. Univ. for Women v. Hogan, 458 U.S. 718, 725-26, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (requiring a close relationship between a state’s objective and means in order to assure that the “validity of a [gender] classification is determined through reasoned analysis rather than through the mechanical application of traditional, often inaccurate, assumptions about the proper roles of men and women”); see also Rio v. Rio, 132 Misc.2d 316, 504 N.Y.S.2d 959, 962 (N.Y.Sup.1986) (finding that "Equal Protection arguments against a paternal surname presumption are most persuasive”).