# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01379-SCT

*IN THE MATTER OF THE PETITION OF S.M.-B.,*
*A MINOR FOR CHANGE OF NAME BY AND*
*THROUGH MONICA LEE McKAY, NATURAL*
*MOTHER AND NEXT FRIEND OF MINOR*

*v.*

*MISSISSIPPI STATE BOARD OF HEALTH*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2023 |
| TRIAL JUDGE: | HON. TAMETRICE EDRICKA HODGES |
| TRIAL COURT ATTORNEYS: | ZORA ELLEN "BRANDY" FARRIS |
| | McKENNA ERIN RANEY-GRAY |
| | LATESHYA LANIECE MARTIN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | McKENNA ERIN RANEY-GRAY |
| | JOSHUA FIYENN TOM |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KIMBERLY PINE TURNER |
| | JUSTIN L. MATHENY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/17/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., MAXWELL AND BRANNING, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     We must decide whether a Hinds County chancellor manifestly erred by dismissing a minor female's petition to legally change her name to a more masculine name as part of a gender transition.  After review, the clear answer is no.  We find it was well within the chancellor's discretion to determine the child needed to mature more before refiling her request.

¶2.	While the minor argues the chancellor had *no discretion* to dismiss the name-change petition because it was uncontested and both parents agreed, Mississippi law states otherwise. In fact, in Mississippi, a chancellor may only grant a minor's name change "where to do so is *clearly* in the best interest of the child." **Marshall v. Marshall**, 230 Miss. 719, 93 So. 2d 822, 825 (1957) (emphasis added). And here, the chancellor determined allowing the minor to legally change her name as part of a gender transition was not in the young girl's best interest due to a lack of maturity.

¶3.	We further note the chancellor's consideration of the minor's lack of maturity is consistent with Mississippi's express public policy against children receiving life-altering gender-transition assistance. And it aligns with the very reason our law treats minors and adults differently—that minors lack maturity to make decisions with serious or long-lasting ramifications.

¶4.	Because the chancellor did not manifestly err by dismissing the petition to be refiled when the minor is more mature, we affirm.

### Background Facts & Procedural History

### I.	Petition to Change Minor's Name

¶5.	In July 2023, a then-sixteen-year-old female filed a petition to change her legal name.[1] The petition was filed by and through the girl's mother. The girl's father also consented.

¶6.	The minor petitioner is a biological female. And her first and middle names given at birth are traditional female names. The minor's given last name is a hyphenated combination

---

[1] Because this case involves a minor, we avoid using both the minor petitioner's given name and proposed name.

of her mother's last name at the time of the child's birth and her father's last name. In the petition, the mother represented that she wanted to change her child's name "due to her [daughter's] gender identification as a male[.]" She claimed her daughter's "given name makes her transition more difficult." The mother requested her daughter's first, middle, and last name be changed—the first name to a more masculine name the daughter has used socially, the middle name to the mother's middle name, and the last name to the father's last name only.

## II.  Response by Mississippi State Board of Health

¶7.  Mississippi Code Section 41-57-23(1)(b) (Rev. 2023) requires that, in "[a]ny petition . . . to . . . change the surname of a child, . . . the State Board of Health shall be made a respondent therein[.]"  Because the petition sought to change the minor's last name, the Mississippi State Board of Health (MSBH) was named a respondent.  And complying with Section 41-57-23(1)(b), the MSBH filed an answer.  In its answer, the MSBH acknowledged receiving notice of the petition and represented it would annotate in the minor's birth certificate if the court ordered a name change.  The MSBH stated the court could take such action without further notice to the agency.

## III.  Dismissal of Petition

¶8.  On November 6, 2023, the chancellor held a hearing on the petition.  The minor, her mother, father, and step-father were present and prepared to testify.  No one representing the MSBH appeared.

¶9.  The petitioner's counsel advised the court that the reason for the petition was the

minor's gender transition. Specifically, counsel stated, "we are here today to hear the petition to change the name of a minor, . . . brought by her mother and next friend . . . . [The minor petitioner] is seeking to change her name . . . because she identifies as a male, and would like to be known as a male and through school, through college, preparing for college and so forth."

¶10. The chancellor called counsel and the minor's parents to the bench. The bench conference was not recorded. But according to the petitioner's statement of evidence—made part of the record via Mississippi Rule of Appellate Procedure 10(c)—the chancellor "stated that she would continue the request at this time but that the parents could return to Court in the future."[2] The hearing then ended.

¶11. On November 21, 2023, the chancellor entered an order dismissing the name-change petition without prejudice. In the order, the chancellor explained she had "determined in her discretion that the Petitioner should mature before name change would be determined by the Court."

¶12. The petitioner timely appealed.[3]

---

[2] The chancellor struck the petitioner's originally filed statement of evidence because it "grossly misstate[d] the communication(s) that took place, and grossly mischaracterize[d] the Court." The chancellor did, however, permit the petitioner to "refile a Statement of the Evidence that embodies the true spirit of M.R.A.P. 10(c)." But the chancellor "caution[ed] the Appellants to be extremely mindful of their proposed ill intentions, in its initial Statement," warning "[f]urther actions of this sort" would lead to potential sanctions.

[3] We note the MSBH, despite not participating at the trial level, moved to "summarily dismiss" the appeal. In its motion, the MSBH asserted the record was not adequate for appellate review. On September 16, 2024, the three-justice panel of Chief Justice Randolph and Justices Coleman and Griffis denied the motion. The MSBH then filed a responsive brief. *But see McLeod v. State Bd. of Health*, 393 So. 2d 479 (1981) (noting the MSBH did

4

**Discussion**

¶13.    We review the chancellor's dismissal order under the deferential manifest-error/abuse-of-discretion standard. ***Rice v. Merkich***, 34 So. 3d 555, 557 (Miss. 2010). This means that the "[f]indings of the chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence, or unless an erroneous legal standard was applied." ***Vaughn v. Vaughn***, 798 So. 2d 431, 433-34 (Miss. 2001) (citing ***Pearson v. Pearson***, 761 So. 2d 157, 162 (Miss. 2000)). "When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of law." ***Powers v. Tiebauer***, 939 So. 2d 749, 752 (Miss. 2005). With this deferential standard in mind, we find the chancellor neither applied the law erroneously nor was she manifestly wrong.

### I.    Best Interest of the Child

¶14.    The petitioner's primary appellate argument is that the chancellor had *no discretion* to deny the name-change petition because it was uncontested and both parents agreed. But Mississippi law says otherwise.

---

not file a brief in the appeal of the denial of a name-change petition). In its brief, the MSBH reiterated its position for remand, claiming an inadequate record—a position with which the petitioner strongly disagrees. The petitioner argues the record is sufficient for appellate review, and we agree. Curiously, in its brief, despite acknowledging its purely disinterested administrative role, the MSBH took the alternative position that this Court should reverse the chancellor's decision. But at oral argument, the MSBH backed off its earlier stance that the chancellor lacked discretion to deny the minor's name-change petition. Regardless, we need not address the MSBH's shifting and conflicting arguments. Whether the chancellor must consider the best interest of the child in a minor's uncontested name change is a question of law for this Court to resolve "uninfluenced by the admissions of parties or counsel." ***Bd. of Levee Comm'rs v. Parker***, 187 Miss. 621, 193 So. 346, 348 (1940) (citing ***Jones v. Madison Cnty.***, 72 Miss. 777, 18 So. 87, 88 (1895)).

**A.** Marshall *makes clear that name-change petitions for minors are categorically different than name-change petitions for adults.*

¶15. The petitioner first cites Mississippi's general name-change statute, Mississippi Code Section 93-17-1(1) (Rev. 2021), and its history. She points out that this name-change statute has no limiting or discretionary language. In fact, in 1857, within a decade of the provision's inception, the Legislature removed the "good reasons shown" requirement from this provision. *Compare* Miss. Code (1858) ch. 6, § 5, art. 41, *with* Miss. Code (1848), ch. 35 , art. 2, § 1. Since then, the statute in its various forms has simply empowered the court "upon petition of any person to alter the names of such person." § 93-17-1(1); *see also* Miss. Code Ann. (1942) § 1269; Miss. Code Ann. (1892) § 492. Thus, the petitioner argues, the court's standard for altering a person's name must be supplied by the common law.

¶16. The petitioner then cites *Marshall*, 93 So. 2d at 827, for the common-law rule that any person may change his or her name if (1) the change is not for a fraudulent purpose, and (2) the change does not infringe on the rights of others. And the petitioner insists her name change violates neither restriction.

¶17. But after review, we see a glaring problem with the petitioner's *Marshall*-based argument.

¶18. In *Marshall*, this Court made clear that the common-law principle the petitioner relies on—that freely allows a person to change her name absent fraud or infringement—*does not apply to minors. Id.* Instead, it applies to "any person of mature years." *Id.* For this reason, this Court in *Marshall* found the common-law rule "ha[d] *no application* to the case at bar

6

. . . ." ***Id.*** (emphasis added). ***Marshall*** "deal[t] strictly with the change in the name of a minor." ***Id.*** And minor name changes are not rubber stamped. Rather, when it comes to name changes for minors, this Court adopted the common-law principle that "[a]n application to change the name of an infant should be granted *only* where to do so is clearly in the best interest of the child." ***Id.*** at 825 (emphasis added).

¶19. So, contrary to the petitioner's assertion, the chancellor *does* have discretionary authority to grant or deny a minor's requested name change. In fact, a chancellor may *only* grant a petition to change a minor's name when it is "*clearly* in the best interest of the child." ***Id.*** (emphasis added).

### B. Marshall *makes no distinction between contested and uncontested name-change petitions.*

¶20. The petitioner tries to distinguish ***Marshall***. She claims the best-interest analysis applies only to contested name-change petitions. But while in ***Marshall*** the child's name-change petition was contested, this Court made no distinction between contested and uncontested petitions. Instead, the Court's clear line of demarcation was between minors and those who have reached the age of majority. ***Id.*** at 825.

¶21. In ***Marshall***, the child's mother sought to change her son's last name from his father's to his step-father's—without notifying the father who lived out of state. ***Id.*** at 823. Her petition had originally been granted. ***Id.*** But when the father learned of the petition, he intervened. And the court rescinded the name-change order and held a hearing. ***Id.*** After the hearing, the court reentered the order changing the child's last name. ***Id.*** The father then

appealed. On appeal, this Court reversed, holding it was not in the child's best interest to change his last name. *Id.* at 825-27.

¶22.    The petitioner describes *Marshall*'s procedural history this way—"[A] chancellor immediately granted a name change for a minor when it was unopposed; then when the petition was opposed, held a hearing to collect testimony and weigh the decision." The petitioner then boldly suggests that, on appeal, this Court did "not disagree[] with this process" but instead merely disagreed "with the chancellor's factual finding." Our review of the opinion, however, does not support this characterization or conclusion.

¶23.    Nowhere in *Marshall* does this Court endorse a chancellor's automatic rubber stamping of an uncontested minor-name-change petition. And this Court in *Marshall* certainly did not hold—as the petitioner states in her brief—that "an uncontested name change only proceeds to a best interest analysis if there is some contest or objection to the proceeding." Again, the common-law rule laid out in *Marshall* is clear—" An application to change the name of an infant should be granted *only where to do so is clearly in the best interest of the child.*"[4] *Marshall*, 93 So. 2d at 825 (emphasis added).

---

[4] Contrary to the petitioner's suggestion, this Court's more recent *Rice* opinion did not alter *Marshall*'s holding. *Rice*, 34 So. 3d 555. *Rice* dealt with the operation of a *specific* paternity statute, Mississippi Code Section 99-9-9 (Rev. 2004)—a statute that does not apply here. *Id.* at 557-60. Moreover, the petitioner admitted at oral argument that the language she cites from *Rice* to support her argument that *Rice* somehow limited *Marshall* to contested name-change petitions comes from *Rice*'s dissent and is not what *Rice* held. *Id.* at 562 (Lamar, J., dissenting) (citing *Marshall*, 93 So. 2d at 825, 827). So the petitioner's reliance on *Rice* is misplaced.

8

¶24. That both parents consent and that the petition is uncontested are certainly relevant to the chancellor's best-interest analysis. But these circumstances do not dictate that the chancellor must find the requested name change—as part of a gender transition—is clearly in the child's best interest.

### C. In all chancery matters involving minors—even uncontested ones—the chancellor has a duty to protect the best interest of the child.

¶25. Indeed, such a blanket removal of the chancellor's discretion clearly goes against longstanding recognition of our chancellors' roles in protecting the best interest of children. As this Court made clear a century ago, in all chancery matters involving minors, the chancellor is charged with protecting the best interest of the child. *Union Chevrolet Co. v. Arrington*, 162 Miss. 816, 138 So. 593, 595 (1932). And this duty has been applied in myriad contexts involving minors. *E.g.*, *May v. Harrison Cnty. Dep't of Hum. Servs.*, 883 So. 2d 74, 81 (Miss. 2004) (holding that in parental-rights termination proceedings "the paramount concern in determining the proper disposition continues to be the best interest of the child, not reunification with the family" (citing *Prante v. Beggiani (In re Beggiani)*, 519 So. 2d 1208, 1213 (Miss. 1988))); *Miss. Dep't Hum. Servs. ex rel. Allen v. Sanford*, 850 So. 2d 86 (Miss. 2002) (allowing the children's paternity petition to proceed—even though a mother's earlier paternity suit had been dismissed with prejudice—because it was in the children's best interest, which outweighed any prejudice to the putative father); *Riley v. Doerner*, 677 So. 2d 740, 744 (Miss. 1996) ("clarify[ing] that a chancellor is *never* obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound

9

to consider the child's best interest above all else"); *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983) (emphasizing that, in child-support-modification proceedings, "as elsewhere, the chancellor is accorded substantial discretion and is charged to consider all relevant facts and equities, to the end that a decree serving the best interests of the children may be fashioned" because "the best interests of the children are as always [the court's] touchstone").

¶26.   "[P]arents have the right to make decisions regarding the care, custody, and control of their children, including decisions regarding education[.]" *Bryant v. Bryant*, 348 So. 3d 309, 314 (Miss. 2022).  But this Court has held that in some circumstances "these rights may be limited if the parents' decision is not in the child's best interest and 'will jeopardize the health or safety of the child, or [will] have a potential for significant social burdens.'" *Id.* (alteration in original) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 234, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972)).  For example, parents may agree to settle a lawsuit on their child's behalf, but that settlement will only be enforced if the chancellor finds it in the child's best interest.  *E.g.*, *Carpenter v. Berry*, 58 So. 3d 1158 (Miss. 2011) (affirming the chancellor's decision to set aside a minor settlement agreement because the settlement's terms were not in the child's best interest).  As this Court explained in *Mississippi State Bar Association v. Moyo*, 525 So. 2d 1289, 1295 (Miss. 1988),  when it comes to "minor's affairs," it is not enough for the chancellor to ensure all technical statutory or legal requirements have been met—the chancellor must also fulfill his or her "inherent obligation" to protect the child's best interest.

¶27.    A petition to change a minor's name falls squarely in the category of "minor's affairs."   So contrary to the petitioner's assertion, our precedent requires a chancellor consider the child's best interest when ruling on a minor's name-change petition.  *Marshall*, 93 So. 2d at 825.

## II.    Exercise of Discretion

### A.    *The chancellor did not have to apply the* Albright *factors.*

¶28.    Alternatively, the petitioner argues that, if the chancellor did have discretion, she should have used the multi-factor *Albright* test in making a best-interest decision.  *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).[5]  We disagree.

¶29.    The *Albright* factors were adopted specifically to guide chancellors in determining *child custody*—not name changes.  *Albright*, 437 So. 2d at 1005.  And the petitioner not only admits this but also concedes that the *Albright* factors are "not all applicable" in the name-change context.  So we certainly cannot hold the chancellor in error for failing to use a factor-based test that admittedly does not apply.

---

[5] In making child-custody determinations, chancellors must consider the following factors in determining the child's best interest—

> [a]ge[,] . . . health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Albright*, 437 So. 2d at 1005.

¶30. Nor do we adopt the ***Albright*** factors—or any other factor-based test—for the chancellor's best-interest analysis in name-change petitions for minors. The facts and circumstances chancellors consider vary based on the context. So our chancellors should have discretion to consider whatever facts and circumstances they deem relevant to a minor's name-change petition.

### B. *The chancellor did not abuse her discretion.*

¶31. Here, the petitioner did not simply request a name change. Rather, the petitioner specifically presented a petition for a name change to assist in a minor's gender transition. And the chancellor obviously found the minor's lack of maturity was the most relevant factor weighing against granting the particular petition—even more relevant than the fact both parents consented to the petition. And though the chancellor did not use the magic words "not in the best interest of the child," it is obvious from her order that the chancellor concluded it was in the minor's best interest to wait until she was more mature to decide to legally change her name as part of a gender transition. *Cf.* ***In re Adoption of Minor Child***, 931 So. 2d 566, 581 (Miss. 2006) (finding that, while the chancellor did not "use the magic words 'other permanent alternatives' on-record, he obviously considered other permanent alternatives to termination of parental rights"); ***Riley***, 677 So. 2d at 745 (recognizing that "no rigid test or magic words should stand in the way of the chancellor as he or she acts to improve the child's welfare . . .").

¶32. After review, we find the chancellor acted well within her discretion.

¶33. The chancellor's weighing the minor's lack of maturity is consistent with the very reason why the law treats minors and adults different—because minors lack the maturity to make decisions with serious or long-lasting ramifications. Under Mississippi law, minors the same age as the petitioner was at the time of the hearing cannot enter into legally binding contracts,[6] cannot vote,[7] cannot purchase alcohol or nicotine products,[8] cannot buy a car,[9] cannot drive late at night,[10] cannot lease or buy a house,[11] cannot trade on the stock market,[12] cannot sue or be sued in their own name,[13] cannot legally consent to sexual intercourse with anyone more than three years older,[14] and, most relevant to this matter, cannot receive any medications or surgical procedures to assist in gender transition. Miss. Code Ann. § 41-141-5 (Rev. 2023).

¶34. While the Mississippi Legislature has not addressed the specific issue of a minor legally changing his or her name as part of a gender transition, the Legislature, through

---

[6] Miss. Code Ann. § 1-3-27 (Rev. 2019); Miss. Code Ann. § 93-19-13(1) (Supp. 2024).

[7] Miss. Code Ann. § 23-15-11 (Rev. 2018).

[8] Miss. Code Ann. § 67-3-53(b) (Rev. 2021); Miss. Code Ann. § 97-32-9 (Rev. 2020).

[9] Miss. Code Ann. § 1-3-27;  Miss. Code Ann. § 93-19-13(1).

[10] Miss. Code Ann. § 63-1-21 (Rev. 2022).

[11] Miss. Code Ann. § 1-3-27;  Miss. Code Ann. § 93-19-13(1), (2) (Supp. 2024).

[12] *Id.*

[13] Miss. Code Ann. § 93-19-13(3) (Supp. 2024).

[14] Miss. Code Ann. § 97-3-65(1)(a) (Supp. 2024).

adoption of the Regulate Experimental Adolescent Procedures (REAP) Act, has expressed a clear policy against children under eighteen making life-altering decisions connected with their gender dysphoria. H.B. 1125, Reg. Sess., 2023 Miss. Laws ch. 303, § 1 (codified as Miss. Code Ann. §§ 41-141-1 to -9 (Rev. 2023)). And the chancellor's weighing the minor's lack of maturity is consistent with Mississippi's public policy against children under eighteen receiving gender-transition procedures. § 41-141-5. While the REAP Act's prohibitive scope is narrowly aimed at gender-transition medical and surgical procedures, the statute's underlying policy is clear and applicable—Mississippi's children under the age of eighteen, due to their immaturity, should not be assisted in making significant, long-lasting changes as part of a gender transition.

¶35. Given that Mississippi favors maturity to make life-altering decisions, the chancellor did not manifestly err by requiring that the minor mature more before attempting to legally change her name as part of a gender transition. We therefore affirm the chancellor's dismissal of the name-change petition.

¶36. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, P.J., CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶37. Because the record in this case is deficient and the deficiency renders this Court unable to properly determine whether the chancery court correctly or incorrectly dismissed

the petition, I find that the chancery court's order should be vacated and that the case should be remanded. Accordingly, I respectfully dissent.

¶38. Appellate courts "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Rice v. Merkich*, 34 So. 3d 555, 557 (Miss. 2010) (quoting *Powers v. Tiebauer*, 939 So. 2d 749, 752 (Miss. 2005)). Questions of law are reviewed de novo, and this Court "will only reverse for an erroneous interpretation or application of law." *Id.* (quoting *Powers*, 939 So. 2d at 752).

¶39. At the hearing on the petition for the name change, the petitioner's attorney announced that S.M.-B. was seeking a name change because "she identifies as a male, and would like to be known as a male and through school, through college, preparing for college and so forth." The attorney stated that the natural mother, biological father, and the minor were prepared to testify. The chancellor then asked counsel and the minor's parents to approach the bench. The record reflects that a bench conference was held and that the hearing was then concluded. Subsequently, the chancery court entered an order that dismissed the petition without prejudice. The order noted that the name change was not sought for any unlawful purpose and that the petitioner had not been convicted of a felony. The order summarily concluded that the "Chancellor determined in her discretion that the Petitioner should mature before name change would be determined by the Court."

15

¶40.     I find that the record is deficient and that the deficiency renders this Court unable to properly determine whether the chancery court dismissed the petition for correct or incorrect reasons. As this Court noted in *In re Prine's Estate*, the development of facts and testimony is an essential function of the chancery court:

> Ever since our chancery court system has been in operation in this state, going back to the earlier days of our judicial history, it has been an established and well-recognized part of that system that one of the important obligations of the chancellor is to see that causes are fully and definitely developed on the facts, and that so far as practicable every issue on the merits shall be covered in testimony, if available, rather than that results may be labored out by inferences, or decisions reached for want of testimony when the testimony at hand discloses that other and pertinent testimony can be had, and which when had will furnish a firmer path upon which to travel towards the justice of the case in hand. The power and obligation reaches back into the ancient days of chancery when the chancellor called the parties before him and conducted a thorough and searching examination of the parties and the available witnesses and decreed accordingly.
>
> . . . .
>
> Such being the power and duty of the chancellor, it has long been the practice in this court that, when the record does not disclose important and material pertinent facts, and which at the same time are revealed by the record as being available, and which therefore should have been produced, the decree will be reversed and the cause remanded in order and the additional definite facts may be placed in proof on a new trial and so that the chancellor, and this court on review, may have that which is the more dependable towards the essential end of reaching a correct and just result.

*In re Prine's Est.*, 208 So. 2d 187, 192-93 (Miss. 1968).  Here, although the minor, the natural mother, and the biological father were prepared to testify at the hearing on the petition for name change, the trial court instead conducted a bench conference off the record, apparently took no evidence, and concluded the hearing thereafter.

¶41.    The petitioner attempted to submit a statement recreating the transcript of the hearing to the participants' recollection under Mississippi Rule of Appellate Procedure 10(c); however, the Mississippi State Board of Health submitted the chancery court's order that struck the statement and concluded that the statement had "grossly misstate[d] the communication(s) that took place, and grossly mischaracterize[d] the Court." It is clear that further development of the facts in this case are necessary.

¶42.    "Our role is that of an appellate court and not as triers of fact *ab initio*." ***Tricon Metals & Servs., Inc. v. Topp***, 516 So. 2d 236, 239 (Miss. 1987) (citing ***Allgood v. Allgood***, 473 So. 2d 416, 421 (Miss. 1985)). The chancellor entered an order that dismissed the petition for name change, finding that the petitioner "should mature" before a name change would be determined by the chancery court. The majority finds that "it was well within the chancellor's discretion to determine the child needed to mature more before refiling her request." Maj. Op. ¶ 1. Yet the record in this case fails to contain factual support for that conclusion. The majority also fails to point to any facts to support the chancellor's conclusion. Instead, the majority cites the Regulate Experimental Adolescent Procedures (REAP) Act, which provides that "[a] person shall not knowingly provide gender transition procedures to any person under eighteen (18) years of age[,]" to support the chancellor's finding. Miss. Code Ann. § 41-141-5 (Rev. 2023). But no medical procedures are at issue in this case, and there is no indication in the record that the REAP Act was brought before the chancery court or that the chancery court considered the REAP Act in its conclusion that the minor lacked maturity. The issue remains that the record is woefully insufficient for review.

Because the record in this case contains few facts, lacks support for the chancellor's conclusory finding, and is underdeveloped, I find that is inadequate and would remand the case for the development of the facts.

¶43.    Moreover, the Mississippi State Board of Health also takes the position that the chancery court's order does not allow this Court to conduct sound appellate review. It cites Mississippi Rule of Civil Procedure 52(a), which provides that "[i]n all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specifically and state separately its conclusions of law there on and judgment shall be entered accordingly." M.R.C.P. 52(a). But "in cases of any complexity, tried upon the facts without a jury, the Court generally should find the facts specially and state its conclusions of law thereon." *Topp*, 516 So. 2d at 239. "As a practical matter, we can better perform our function if we know what the trial court did, and why."*Id.*

¶44.    As the petitioner states, this case "presents a major question of first impression about the standards for granting an uncontested name change of a minor." The chancery court made a factual finding that lacks evidentiary support in the record and failed to make conclusions of law to provide a basis for appellate review. Thus, in order that this Court better perform its appellate function, I also find that the chancellor on remand should find facts specifically and state its conclusions of law.

¶45. The absence of an adequate record significantly hinders this Court's ability to conduct meaningful appellate review. Therefore, I dissent and would vacate the court's order and remand the case for further development of the record.